## GERSHOM B. GUYER *vs.* ANSON STRATTON.

A parol partition of a divisional fence, by adjoining proprietors, is valid.

A notice of the insufficiency of a fence, signed by two out of three fence viewers, is sufficient, where all the fence viewers were notified to be present and act.

Reasonable certainty is all that is required in the description of the fence in such a notice.

A notice given by the fence viewers was as follows :—" *Mr. S.* You will take notice that the undersigned, fence viewers of the town of *W*, have been called on by *G* to view the fence between his land and yours, and on view we find your portion of the fence insufficient, and if you do not repair the same within fifteen days the said *G* will repair the same at your expense." It appeared that there was other land of *S* adjoining that of *G* within the same town, but that there had been complaint made by *G* to *S* of the fence in question, and that *S* had some time before commenced repairing it upon a former notice from the fence viewers, and that in fact *S* was not in doubt what fence was intended. Held, that in the circumstances the notice was not insufficient in not specifying the particular fence intended.

Held also, that the notice was not insufficient in not stating the particular part of the fence which belonged to *S*.

Also that it was not insufficient in not stating when the fifteen days limited for the reparation of the fence by *S*, began to run.

It seems to have been the intention of the legislature to allow fifteen days from the time of the service of the notice.

The notice should be in writing, but the service of it may be entirely informal. A duly authenticated notice left at the dwelling house of the party is sufficient.

And such a notice was held to be sufficient although the party was absent at the time from the state.

And where a notice was received by a party while out of the state, it was held to operate upon him in the same manner as if received within the state.

Where *G*, upon the neglect of *S* to begin to repair the fence within the fifteen days allowed him, began himself in good faith to make the repairs, it was held that he had a right to go on and finish them, and was not bound to desist upon the offer of *S* to make them.

Held also, that *G* was not bound to use materials which *S* brought to the place while the repairs were being made and left upon his own land, but did not request or authorize *G* to use.

The fence built by *G* was a substantial stone wall, which *S* claimed was more expensive than one made of cheaper materials, and that *G* had no right to make one of so expensive a character. The judge charged the jury that *G* was not bound to use the same kind of materials that the old fence was made of, but might use such as he pleased, provided he acted reasonably, but that he would have no right to be extravagant either in the materials or work. Held, that this charge was correct.

The fence viewers' certificate of their valuation of the repairs made by *G*, was as follows :—" We, fence viewers, &c., have this day viewed the divisional fence between *G* and *S*, the fence before standing there having been adjudged by us

insufficient, and the said *S* having been duly notified to repair the same and having neglected to do so, and the said *G* having built the fence anew, and we do adjudge said fence so built sufficient, and estimate the value of such repairs at $2.40 per rod—the length being 20¼ rods—the whole amount being $97.90.'' Held, that this certificate was sufficient, and a demand made upon it by *G* upon *S* a sufficient demand, to enable *G* to recover of *S* the double value allowed by the statute, although the certificate did not state whether the $97.90 was the double or the single value of the repairs, that being easily ascertainable from the certificate by calculation.

ACTION on the 5th section of the statute concerning fences, (Rev. Stat., tit. 15,) to recover double the value of repairs made by the plaintiff upon the fence of the defendant, the fence having been found insufficient by the fence viewers and the defendant having neglected to repair it after notice from them.   The case was tried to the jury on the general issue.

On the trial it was admitted by the parties that there had never been any divisional fence between their lands until November, 1853, when the plaintiff and defendant made a parol division by agreement, the plaintiff taking the east half and the defendant the west half.   The plaintiff testified that the agreement was not in writing, that in the spring of 1854 he erected on his half a substantial and suitable stone wall, and that in the course of the same year the defendant made on his half a fence of posts, with boards and rails between, but which was never a lawful fence, and that the division thus made had ever since been recognized by the parties.   The defendant claimed that the division was illegal, because not in writing and recorded, and that the evidence on that point should be excluded ;  but the court admitted it.

The plaintiff offered evidence to prove that the defendant had not kept his part of the fence in repair, and that he therefore, in the month of September, 1858, called upon D. M. Marvin, G. M. Jennings and Burr Meeker, the fence viewers of the town of Westport, where the lands lay and the parties resided, to view the fence ;  that the fence viewers all went and viewed the fence, and concurred in the opinion that it was insufficient ;  and that all agreed to sign a notice to the defendant to that effect, and that it was on the same day drawn up

and signed by two of the fence viewers, and that the third failed to sign it in consequence of a misunderstanding on his part as to the place where they were to meet for that purpose. The notice was as follows :—

WESTPORT, Sept. 13, 1858. Mr. Anson Stratton—*Sir :* You will take notice that we the undersigned, fence viewers of the town of Westport, have been called on by Gershom B. Guyer to view the fence between his land and yours, and upon such view find your portion of said fence insufficient, and if you do not within fifteen days put such insufficient fence in repair, so as to make the same a lawful fence, said Guyer will repair the same at your expense.

D. M. MARVIN, *Fence Viewers*
G. M. JENNINGS, *of Westport.*

The defendant objected to any evidence as to the notice, on the ground that it was not signed by all the fence viewers; but the court admitted it.

To prove that the notice was served upon the defendant, the plaintiff offered as a witness William Marvin, a son of said D. M. Marvin, who testified that on the 15th day of September, 1858, his father gave him the notice to serve upon the defendant, and that he on the same day went with it to the dwelling house of the defendant in Westport, and left it with the wife of the defendant, she at the same time informing him that the defendant was then absent somewhere at the west. On this point the defendant testified that on the 15th day of September he was in the state of Ohio, engaged in temporary business, and that he had then been absent some six or eight weeks in various places on such business—that he had previously instructed his wife to direct letters to him at Detroit, in the state of Michigan, and that he arrived at Detroit, and received from her a letter enclosing the notice, on the 26th day of September—that he started for home the next day, stopping at various places on the way, and reached Westport on the 7th day of October following. The plaintiff offered evidence to prove, and it was not denied, that he began work upon the fence on the 15th day of October. The defendant objected to the evidence of service which was offered on the

ground that the service must have been made on him person-
ally, and also on the ground that it did not specify whether
he was to repair the fence within fifteen days from the date of
the notice or from the time of the service.  The court over-
ruled the objections and admitted the evidence.

It was admitted by the plaintiff that he and the defendant
owned lands adjoining in another place in Westport, and that
there was a divisional fence between those lands, and the
defendant claimed that the notice was insufficient because it
did not specify which divisional fence was intended.  It was
not claimed by him that he was ignorant or in doubt which
divisional fence was intended by the notice, and to show that he
could not have been the plaintiff offered evidence to prove that
there had never been any complaint of the other divisional
fence, but that he had repeatedly and for years complained to
the defendant that the fence in question was insufficient, and
that he had suffered great damage at different times in conse-
quence of cattle getting into his lot through and over this
fence, and that this was well known to the defendant; and
that two years before the time in question he had called out
the fence viewers, who viewed the fence and gave the defend-
ant notice in writing that it was insufficient and that he must
repair the same, and that the defendant had then admitted
that his fence was not a lawful one, and declared his intention
to build a good stone wall, and employed a man to blast
rocks upon the land, and spent several days himself in digging
stone to make the fence, but soon after desisted and did no
more about it until after he received the last notice.  The
court refused to exclude the notice on the ground so claimed
by the defendant.

The plaintiff, to prove that after he had completed the fence
the defendant had notice of the appraisement of it by the fence
viewers, and to show a demand of the sum assessed against the
defendant by the fence viewers, offered in evidence a certificate
signed by the fence viewers, with the testimony of one Daniel
Burr, that on the 30th day of November, 1858, he called on
the defendant with the certificate, and told him that he had
the award of the fence viewers, and demanded of him on

behalf of the plaintiff the amount of the award and the fees of the fence viewers, stating the whole amount to be $103.60 ; that he did not read the award to the defendant, nor did the defendant read it or request him to read it, but that he held it open in his hand, and that the defendant could have read it had he chosen so to do, and that the only reply the defendant made was, that he would do nothing about it. The defendant objected to the admission of this evidence on the ground that it did not show a legal demand upon the defendant of the amount which he was required to pay. The court admitted the evidence. The defendant also objected to the admission of the certificate in evidence on the ground that it was not sufficiently specific as to the single value of the repairs to constitute it a legal certificate, but the court received it. The certificate was as follows :—

This is to certify that we, David M. Marvin, Gideon M. Jennings and Burr Meeker, all of the town of Westport, fence viewers of said town, have this day viewed the fence between Gershom B. Guyer and Anson Stratton, both of said Westport, the said line of fence being a divisional fence between said Guyer and said Stratton, the fence heretofore standing there having been by us adjudged insufficient, and the said Stratton, whose duty it was to repair the same, having been by us notified according to the statute in such case provided, and having neglected to repair the same, and the said Guyer having built said fence anew,—and we do find and adjudge the said fence, so built by said Guyer, sufficient, and do estimate the value of such repairs to be the sum of $2.40 per rod ; the length of said line so repaired being twenty rods and one-third in length; the whole amount being $97.60. Dated at Westport, this 23d day of October, A. D. 1858.

D. M. MARVIN,          ) Fence Viewers
GIDEON M. JENNINGS,  }    of the town
BURR MEEKER,          )   of Westport.

Fees, $6.   Whole amount, $103.60.

The defendant claimed that he intended to repair his fence after his return home, and to prove that he did, he testified

that on the next day after his return he engaged in digging rocks again upon his land, in the same manner as two years before after the service of the former notice by the fence viewers, and employed the same man to blast rocks; that the man blasted rocks for three or four days until the 13th day of October; that the plaintiff began to work upon the fence on the 15th day of October, and that the defendant, on the next day thereafter, went to the place with a pair of oxen and two or three men, and commenced replacing the posts, boards and rails which had been removed by the plaintiff the day before; that this was very early in the morning, and that about seven o'clock of the same morning the plaintiff with his men came there again, and insisted upon going on with the wall which he had begun the day before, and persisted in going forward from day to day until the wall was finished; and the defendant claimed, and requested the court to charge the jury, that under these circumstances the plaintiff had no right to go forward and make the fence. The plaintiff claimed that as the defendant had neglected to begin to repair the fence until after the plaintiff had begun to repair it, his, the plaintiff's, right was then complete and absolute to build the fence, and the defendant had no right to interfere with him. The plaintiff also claimed that the facts showed, and that the jury should find from those facts, that the defendant was not acting in good faith, and that he did not sincerely intend to make a good and lawful fence. The court charged the jury that a blasting of rocks or digging of stone was not of itself a repairing of a fence within the meaning of the statute under which these proceedings were had, and that if, as was claimed ·by the plaintiff and not denied by the defendant, the defendant had done nothing else by way of repairing the fence until the 15th day of October, when the plaintiff began, the plaintiff had good right so to begin, and having begun had a right to continue until he had completed the fence. ·

The defendant also offered evidence to show that, while the plaintiff was so at work, he had drawn stone from his own land up to the fence where the plaintiff was at work, and claimed that the plaintiff was bound to use the stone so drawn

by him in making the wall, and requested the court so to charge the jury ; but the defendant did not at the time give the plaintiff permission to use the stone. The court did not so charge the jury, but told them that the plaintiff was not bound to use the stone so drawn by the defendant in making the fence.

The defendant claimed to have proved that while the plaintiff was at work upon the wall, he and his men went before them and replaced the posts, boards and rails as fast as the plaintiff removed them, and also made some repairs on the board and rail fence in advance of where the plaintiff was at work, all which the plaintiff removed, and built and completed the wall as he had begun ; and requested the court to charge the jury that, if they should find the facts on this point as claimed by him, the plaintiff could not recover. On this point the court charged the jury that if the defendant had neglected to repair the fence or to commence such repair until after the plaintiff had begun, the plaintiff had a right to continue to make the fence as he had begun it.

The defendant offered evidence to prove, and claimed that he had proved, that the post, board and rail fence might have been repaired, so as to be a lawful fence, at an expense not exceeding $1 per rod, and claimed that the plaintiff, if he did anything, should have repaired the old fence, and had no right to build a stone wall in place of it, and having done so could not recover. The plaintiff claimed to have proved that the wall built by him was a plain, substantial stone wall, of about the same character as he had built for himself on his part of the line, and was not extravagant or needlessly expensive. The court charged the jury on this point, that it was the right of the defendant to repair the fence in what way he pleased, provided he made it a lawful fence, within the time limited by law after notice from the fence viewers, but that if he neglected to avail himself of that right until after the time so limited had expired, then the plaintiff had a right to repair the fence so as to make it lawful, and in so doing was not bound to use the same kind of materials as the old fence, but might use such materials as he pleased, provided he acted reasonably and did

not make it needlessly expensive, but that he would have no right in such case to be extravagant either in the materials used or in the workmanship ; and that if the jury should find that the fence so built by the plaintiff was not extravagant or needlessly expensive, but reasonable and proper, then in such a case they should presume that the fence viewers had valued the fence at its just value, and it would be their duty, so far as this point was concerned, to find for the plaintiff.

The jury having returned a verdict for the plaintiff, the defendant moved for a new trial for errors in the rulings and charge of the court.

*Hawley* and *Woodward*, in support of the motion.

*Carter* and *Wilson*, contra.

SANFORD, J. A number of questions are presented by this motion.

First, it is claimed that the superior court erred in receiving parol evidence of the division of the fence in question. The statute requires each of two adjoining proprietors to make and maintain one half of the divisional fence, (Rev. Stat., tit. 15, sec. 2,) and it provides a way in which an exist- .ing fence may be divided where adjoining proprietors can not agree, or where either party refuses to make such division. Id., §§ 4, 8. It points out also the manner in which a compulsory division shall be perfected, and indicates by strong implication the way in which it must be proved. But these statutory provisions in their terms are applicable to compulsory proceedings only. No statute requires that amicable partitions made and carried into execution by agreement of the parties interested shall be evidenced by written instruments or entered upon the public records, and the very silence of the legislature in regard to such divisions, seems significant of its will to require formalities and securities in one case which it deemed unnecessary and inexpedient in the other. It is worthy of notice also, that although this subject of fences, of so great interest to our people, has engaged the attention of our legislators ever

since the first settlement of the country, no statute has *in terms* made it necessary that a division, agreed to and acted upon by the parties themselves, should be either written or recorded, while by a statute made in October, 1713, and afterwards retained in every revision of the statutes until that of 1821, it was provided that " if any person who ought to maintain any divisional fence " shall neglect or refuse to repair the fence " set out to him " by the selectmen, " or divide according to the agreement of the parties concerned therein, appearing by writing under their hands, *or other sufficient evidence to show the same,*" the party aggrieved might call out the fence viewers, procure the repairs to be made, and subject the party who ought to have made them to the payment of double the value of such repairs and costs ; (Stat. ed. 1808, p. 312, §§ 39, 41 ;) thus recognizing the sufficiency of " other evidence " of a division by the parties, besides a writing under their hands.

The statute of frauds seems to have no application. An agreement between two parties charged by law with a common burden, as to the particular portion of it which each of them shall bear, is not a contract or agreement for the sale of lands, tenements or hereditaments, or any interest in or concerning them. And if it was, yet, having been executed on both sides, the statute can not be set up to invalidate it. An agreement between two joint owners of goods of the value of seventy dollars and more, to divide them equally, and an actual division pursuant to such agreement, could in no way be affected by the second section of that statute. And we think an actual division of fence between adjoining proprietors can not be affected by the first.

In the next place, the defendant contends that no legal notice of the insufficiency of the fence had been given him. His first objection is that the notice given was signed by two only, of the three fence viewers in office. This objection is unfounded. The rule is that an authority conferred by law for public purposes may be executed by a majority of the individuals on whom it is conferred, if all of them have been duly notified to act. Church, J., in *Middletown* v. *Berlin*, 18

Conn., 197. In the case of *Edgerton* v. *Moore*, 28 Conn., 600, and in *Fox* v. *Beebe*, 24 Conn., 271, when considering the manner in which the duties of fence viewers are to be executed, we said that they are not judicial officers ; but it is manifest that their authority is conferred, as their duties are imposed upon them, for public purposes ; that they belong to that class of public agents who may act by a majority of their number, if all have been duly notified. In this case the notice itself contained no evidence of the existence of another fence viewer besides those who signed it, but it being conceded that there was another, the plaintiff introduced evidence to show that all three of them being present at the examination of the fence, and at the formation of, and concurring in, the judgment regarding it, all agreed to give the notice, and to meet for the purpose of perfecting it at a time and place designated ; so that all of them had notice to attend and act, but one of them did not attend, and therefore his signature to the notice did not appear. This evidence was properly received to show due notice to all the fence viewers, and, if true, satisfied the rule above alluded to.

In the argument of the cause the counsel endeavored to deduce an inference of the legislative intent to make necessary the attendance of every member of the board, and their entire concurrence in every act, from the consideration that in the 3d, 6th, 7th, 8th and 9th sections of the statute a specific number of individuals, less than the whole, are explicitly empowered to perform the duties specified in those sections, while in the fifth no such express provision is contained. We suppose the difference between the sections referred to in this particular is purely accidental, the supposed necessity of notice to every member of the board, and the desire to avoid the expense and inconvenience of giving it, being present in the mind of the legislators in the one case and not in the other.

The defendant claims, in the second place, that the notice was insufficient and inadmissible because it did not specify the particular fence intended by it. It is a sufficient answer to this objection to say, that although it was conceded that the parties owned other adjoining land with a dividing fence

thereon, it was not conceded, and does not appear, but that the whole of that fence belonged to the plaintiff, or that there was any other than the fence in controversy to which the notice could by possibility apply ; and this court never advises a new trial on account of the admission of evidence, unless it is shown affirmatively that such admission was illegal. And besides, the notice upon its face is applicable to all the fence between all the adjoining lands of the plaintiff and the defendant, and required the defendant to put all his " portion thereof " in repair. And if, as this court held in *Fox* v. *Beebe*, (supra,) it is not necessary in the notice to specify the particulars wherein the fence is defective, it can not be necessary to specify the particular part of the defendant's " portion " of the fence in which the deficiency is found. The party may easily ascertain where it is by measurement, by personal examination, or by inquiry of the fence viewers who give the notice.

And again, the uncontradicted evidence introduced by the plaintiff, and received without objection, shows conclusively that this notice conveyed to the defendant's mind all the information in regard to the particular fence intended which could have been conveyed by an instrument framed with all the precision, accuracy and fullness required in a plea in abatement. And this court never advises a new trial for the improper reception of evidence, where, as in this case, it is shown affirmatively that no injustice has been effected by such evidence. Reasonable certainty is all that ought to be required in a document of this character, emanating from a board like this.

Another objection taken to the notice is, that it does not state whether the fifteen days mentioned in it were to begin to run from the date of the notice, or from the time of its service on the defendant. It was probably the intention of the legislature to give to the party fifteen days in which to make the repairs found necessary, before the other party would be authorized to make them at his expense, and if so, the time should commence rather from the service than from the date of the notice. But we need not decide this question, because, in the case before us, it is conceded that the notice was served, and actually came to the defendant's hands, more than fifteen

days before the plaintiff began to repair the fence. This objection therefore was properly disregarded by the superior court.

It is said, in the next place, that the notice was not *duly served;* that what is called personal service was indispensable. But the statute says nothing about service of any kind. Its language is, " the fence viewers shall without delay *give notice,*" &c. But how they shall give it, except that it shall be in writing, the statute does not provide. The notice is not a' writ, or any kind of judicial process, and no more requires an executive officer to make service of it, than does notice of the dishonor of a bill of exchange or promissory note. A written notice delivered by the fence viewers themselves, or by their agent, whether he is an executive officer or not, is all the notice which the law requires. And unless such a notice left at the dwelling house of the party to whom it is addressed, is duly given to the party himself, the operation of the statute may be defeated at the will of every defaulter. We have no doubt that a duly authenticated notice left at the dwelling house, is given as the law requires.

This notice too, actually came to the hands of the defendant more than fifteen days before the plaintiff began his work upon the fence. It is of no importance that the notice came to the defendant's hands when he was out of the state. As it was not a civil process or in the nature of civil process, it operated as well beyond the limits of the state as within them.

The fence viewers' certificate was sufficiently specific. It stated the exact length of the fence repaired and the value of the repairs per rod, the amount of the viewers' fees, and the whole amount which the defendant was liable to pay for such repairs, and upon these elements it only required a single and simple arithmetical calculation, familiar to every one, to demonstrate what was, according to the estimate of the fence viewers, the single, and what the double value of the repairs to which it related. It needed only to be ascertained whether twenty rods and one-third of a rod of fence, at two dollars and forty cents per rod, amounted to ninety-six dollars and sixty cents, or

to only half that sum. This objection to the certificate and the demand made thereon was groundless.

The charge of the court to the jury was correct. We have no occasion to decide whether the defendant would or would not have had the right to make these repairs after the expiration of fifteen days from the notice, and against the plaintiff's will, had he in good faith begun and prosecuted the work with reasonable diligence to its completion. The exigencies of the case do not require such decision.

It is clear, as the judge charged the jury, that blasting rocks and digging stone are not in themselves repairing a fence, and nothing else is claimed to have been done by the defendant prior to the plaintiff's commencement of the work on the 15th of October, and even that was brought to a close on the 13th of October, two days before the plaintiff began.

We agree with the superior court, also, in the opinion that after the plaintiff had in good faith begun to make the repairs in question, he had a right to proceed with the work to its completion, without any interference from the defendant. The language of the statute on this point is explicit and unambiguous. It is, " if he or they do not within fifteen days put the same in sufficient repair, then the party aggrieved may do it." Sec. 5. And it is not to be supposed that the legislature intended to authorize the aggrieved party, after having incurred the necessary expenses of preparation, merely to begin such a work, or to prosecute it only so far as the interest, convenience or caprice of the defaulting party might allow. Such a construction of the law would be mischievous, if not intolerable.

The stones drawn by the defendant while the plaintiff was at work upon the fence, were no part of the fence which the plaintiff was authorized to repair. And as the defendant neither requested nor gave the plaintiff permission, he was not at liberty, to use them, and would have rendered himself liable to a suit by doing it.

In regard to the manner in which the repairs were made, the charge was unexceptionable, and was sanctioned by the opinion of this court in the case of *Fox* v. *Beebe,* before cited.

Upon the whole we think the motion for a new trial ought to be denied.

In this opinion the other judges concurred.

New trial not advised.