ALEXANDER DE MERS v. TIMOTHY ROHAN, Appellant.

**Division fences: PARTITION.** There are but two methods of di-
1   viding partition fences, one by order of the fence viewers, and
    the other by written agreement as provided by Code, sections
    2356 and 2361; and a division based on a mere understanding of
    one landowner with the tenants of the other is of no effect.

**Duty to maintain.** Where there has been no legal partition of a
2   division fence, the duty of maintaining the entire fence rests
    on both owners alike, and neither can complain of the neglect
    of the other.

**Trespassing, animals: LIABILITY OF OWNER.** Where there has been
3   no legal partition of a division fence and the stock of one adjoin-
    ing owner break through onto the land of the other and then into
    an enclosure surrounded by a lawful fence, the owner of the stock
    is liable for the damage done.

**Evidence: DISTRAINT.** In an action for damages from trespassing
4   cattle, an explanation of why the cattle were not distrained
    as soon as discovered, was properly admitted.

*Appeal from Woodbury District Court.*— HON. GEO. W.
WAKEFIELD, Judge.

WEDNESDAY, FEBRUARY 8, 1905.

ACTION to recover damages caused by trespassing cattle.
From judgment as prayed, defendant appeals.— *Affirmed.*

*Sullivan & Griffin,* for appellant.

*Geo. W. Argo,* for appellee.

LADD, J.— The farm of Fortin, occupied by plaintiff
as tenant, joins that of defendant on the south. A railroad
runs through both farms. Defendant built the line fence
from the railroad to the west, and Fortin or
his grantor that to the east. But the evidence
fails to establish any agreement between them
as to what portion each should erect or maintain. The only

1. DIVISION
   FENCES: par-
   tition.

evidence on this subject is that of defendant, who testified: " I had an arrangement through the renters as to which part of the fence I should maintain. Mine was west of the railroad track, and his was east. I built and maintained the west part, and they built and maintained the east part. It had been kept that way ever since I bought the farm in 1885." No authority for this was traced to Fortin or his grantor, and the evidence indicated that the fence east of the track had never been a legal fence. The court instructed the jury that the evidence showed " an agreement between the owners of the land assigning the maintenance of the respective portions of the fence." We cannot concur in this view. But two modes of dividing partition fences are recognized by statute — one by written agreement, and the other by order of the fence viewers. Sections 2356, 2361, Code. Neither of these was followed. Nor can it be said that the duty to maintain the fence to the east arose by prescription. Such an inference is obviated by proof that it never complied with the statutory requirements, and that it was erected in pursuance of an oral agreement with tenants. See *Rust v. Low*, 6 Mass. 90.

The mere fact that Fortin or his grantor constructed a fence of some kind will not support the inference that it was erected in pursuance of an agreement with either of them dividing the line, for either adjoining owner, 2. DUTY TO MAINTAIN. in the absence of division, has the right to build such portions of the fence as he may see fit, and the duty of maintaining every portion of it rests on both alike. Neither is in a situation to complain of neglect in not so doing on the part of the other. *Sturtevant v. Merrill*, 33 Me. 62; *Thayer v. Arnold*, 4 Metc. (Mass.) 589; *Lawrence v. Combs*, 37 N. H. 335 (72 Am. Dec. 332). See note to *Tonawanda R. Co. v. Munger*, 5 Denio (N. Y.) 255 (49 Am. Dec. 239), and to *Myers v. Dodd*, 9 Ind. 290 (68 Am. Dec. 624).

The authorities are in conflict as to whether an oral agreement dividing a line fence is within the statute of

frauds. In the negative will be, found: *Ivins v. Ackerson,*
38 N. J. Law, 220; *Guyer v. Stratton,* 29 Conn. 421. In
the affirmative: *Osborne v. Kimball,* 41 Kan. 187 (21 Pac.
Rep. 163); *Glidden v. Towle,* 31 N. H. 147, 163; *Knox v.
Tucker,* 48 Me. 373 (77 Am. Dec. 233); *Pitzner v. Shinnick,*
41 Wis. 676. There is no question but our statute contem-
plates a written agreement. Section 2361 of the Code pro-
vides that " the several owners may, in writing, agree upon
the portion of the partition fence between their lands which
shall be erected and maintained by each, which writing shall
describe the land and the parts of the fences so assigned, be
signed and acknowledged by them, and filed and recorded in
the office of the recorder of deeds of the county or counties in
which they are situated." In providing for a written agree-
ment, and specifying the circumstances under which it will be
binding, the intention to exclude any other is manifest.
Possibly an agreement in parol, when executed, may be good
between the immediate parties thereto. Such was the hold-
ing in *York v. Davis,* 11 N. H. 241. As it affected the im-
mediate parties only, however, the court decided that the
jurisdiction of the fence viewers to make a permanent division
was not ousted. In *Pitzner v. Shinnick,* 41 Wis. 676, the
question as to whether a mere parol division will bind third
persons who may become owners or lessees of the premises,
and have in no way recognized or acted upon the division, was
decided in the negative, and we deem this the correct rule.
The statute has pointed out the methods of establishing a
permanent partition, and to effect this, one of these should be
followed.

In the instant case plaintiff knew nothing of any previous
arrangement by defendant with the tenants preceding him,
and it was in no way obligatory on him. The court, then,

3. TRESPASSING   was in error in assuming that, as to the parties
ANIMALS: lia-   to this action, there had been any partition of
bility of
owner.          the line fence. The error, however, was with-
out prejudice. The evidence tended to show that the cattle

passed over the line between the farms east of the tract upon that of plaintiff, and thence to the yard near his house. This was surrounded by a fence which the jury might well have found met the requirements of the statute. Through it defendant's cattle broke, and therein damaged plaintiff's feed and grain, as was alleged. Had there been a partition of the line fence, and had the cattle escaped because of plaintiff's neglect to maintain his portion, there would be ground for the contention of appellant that there could be no recovery, even though the yard were inclosed with a lawful fence, though the court instructed otherwise. See *Singleton v. Williamson,* 7 Hurlst. & N. 410; *Ricketts v. Ry.,* 19 English Ruling Cases, 18; *Page v. Olcott,* 13 N. H. 399. If such were the case, the escape of the cattle on plaintiff's premises would have been owing to his own neglect to maintain the partition fence, and the damages to the property in the yard, according to the decisions cited, even though inclosed by a sufficient fence, the natural consequences flowing from such neglect. Said Pollock, C. B., in the first case:

When wrong is done, and consequential damage sustained, the law inquires who committed the first wrongful act and thereby occasioned the mischief? In this instance the defendant, who was the owner of a close called " Bridge Green," was bound securely to fence it so that the cattle of the plaintiff, who was owner of an adjoining close, might not be able to stray into it. This the defendant neglected to do, and in consequence the cattle of plaintiff strayed in Bridge Green, and from thence into another close of the defendant, called Cornfield. It is argued that the cattle getting into the cornfield was not a necessary consequence of defendant's neglect to keep up the fence of Bridge Green. Certainly it was not a necessary consequence; it was not a *causa causans;* but it was a *sina quo non.* If a pit be dug in a highway or any place where persons have a right to pass, it is not a necessary consequence that any one should fall into it, although it may be that, either in the night or day time, someone would do so. In such a case it is sufficient if the injury is the accidental result of the wrongful act.

The New Hampshire case is precisely in point. There the sheep of the defendant escaped from his inclosure into the plaintiff's pasture lands, through the insufficiency of that portion of the fence which the plaintiff was bound to repair, and thence into the *locus in quo*. The court after full consideration, concluded that the

The plaintiff's negligence must be regarded as that occasioning the damage sustained. It is a fair presumption which the law will make that if the plaintiff had performed her duty properly, in repairing her part of the division fence, the sheep would not have escaped from the pasture of the defendant, and the damage complained of would not have been sustained. And it is clear that while, under the circumstances of the case, the plaintiff is, in law, to be regarded as having contributed to the result of which complaint is made, she can have no action for the damage sustained, against the defendant, who has not occasioned it either by positive wrongful acts or by any negligence whatsoever.

In the instant case, however, there was no partition of the line fence, and the omission to keep it in repair was not due to any neglect on the part of the plaintiff of which defendant might complain; and in view of the holding of this court in *Wagner v. Bissell,* 3 Iowa, 396, and like cases, the defendant was not bound to restrain his stock. They were running at large. This did not shield the owner, however, from liability, if they broke the close of plaintiff surrounded by a lawful fence. *Frazier v. Nortinus,* 34 Iowa, 82; *Herold v. Meyers,* 20 Iowa, 378. That they entered such close and committed depredation is not disputed. The only issues for the jury were the sufficiency of the fence inclosing the yard, and the amount of damages, and these were fairly submitted. That the line fence furnished no obstruction to cattle was undisputed, and for this reason the jury must have based their decision upon a finding of the sufficiency of the yard fence.

II.   The rulings on the admissibility of evidence were

correct. The testimony of the illness of plaintiff's wife
was properly received, as explaining why the
cattle were allowed to remain at the corn pile
after being discovered.

4. EVIDENCE: dis-
traint.

That concerning defendant's forceable taking of his cattle from plaintiff's inclosure was so connected with the restraint and trespass of the stock as to be admissible as a part of the transactions.

That part of the motion for new trial based on alleged surprise and newly discovered evidence was properly denied. It is possible that defendant did not personally know that the petition claimed damages caused by the cattle breaking through the inclosure of the yard, but of this counsel must have been aware. At any rate, they were soon apprised by the evidence introduced, and if so taken by surprise as not to be able to safely proceed with the trial, a continuance should have been asked. For all that appears, the additional evidence, by the exercise of ordinary diligence, could have been procured.

Finding no prejudicial error, the judgment is *affirmed*.