OSCAR NELSON, Appellant, v. JOHN M. WILSON, C. O. WILSON, WILLIAM WILSON and BERT WEED.

**Division fences:** PAROL AGREEMENT: STATUTE OF FRAUDS: DAMAGES.
The oral agreement of adjoining landowners to erect and maintain a division fence, which was carried out by its erection,

although not a lawful fence or one sufficient to turn stock at all times, is provable and binding upon the parties and their tenants acquiescing therein; as an agreement of that character does not contemplate any interest in the land. And where the cattle of one escaped through the other's portion of the fence, because of his negligence in failng to keep the same in repair, and were damaged thereby, the other is liable for the injury.

*Appeal from Crawford District Court.*—HON. Z. A. CHURCH, Judge.

FRIDAY, OCTOBER 25, 1912.

A DEMURRER to the petition as amended was sustained, and, as plaintiff elected to stand on the ruling, petetion was dismissed. Plaintiff appeals.—*Affirmed in part, and Reversed in part.*

*C. R. Metcalfe,* for appellant.

*Harding & Kahler,* for appellees.

LADD, J.—The plaintiff and O. C. Wilson were tenants of adjoining farms, the S. W. ¼ and the S. E. ¼, respectively, of section 11, in Willow township. The owners had erected a division fence between the quarters about twenty-three years before—plaintiff's landlord the north half, and Wilson's landlord the south half—in pursuance of an oral agreement, and thereunder have since maintained their respective parts. But the south half of the fence was never "a lawful or good and substantial fence," but was built "of sticks for posts, set from fifteen to twenty feet apart, and some further; and that part of the sticks were not more than two or three inches thick, and from five to six feet long, and he placed thereon three wires, which were from fifteen inches to two feet apart, and not of sufficient strength to prevent stock, cattle of

ordinary habits, from going through the same. That said fence during the last twenty years became old, the posts broken, wires rotten and broken to pieces, loose and insecure, and so remained in said condition up to and during the year 1909, and at the time of the happening of the grievances hereinafter stated."

Plaintiff and Wilson acquiesced in the above division, and the latter rebuilt and repaired some of his portion of the fence, and plaintiff had requested Wilson to put said fence in lawful condition, so as to turn his cattle, but this he failed to do. On the west side of it was the plaintiff's pasture, and to the east Wilson planted corn; the inside row being a foot or two or three from the fence, and, as he cultivated, it grew until ten or fifteen feet high, with roasting ears and leaves within a few inches from the fence, and by these plaintiff's cows were tempted, and they in their weakness yielded by reaching their heads between the wires and eating some of the roasting ears, and having tasted "were allured and enticed to walk and go into said field; the fence being dilapidated, wires loose, and posts broken and in such a bad condition that it admitted said cattle without restraint." They ate until "sick and foundered," as a result of which two of them died, others failed in the flow of milk, and still others would not fatten, all to plaintiff's great damage, for which he prays recovery. To a petition and amendments thereto so alleging, in substance, and that plaintiff's landlord had at all times maintained his part as a lawful fence, and that defendants were estopped from denying the partition of the division fence, that this had been ratified and established by prescription, the defendants demurred, on the grounds: (1) that the division fence was never a lawful fence, even though constructed by oral agreement, and for this reason neither Wilson nor his landlord owed any duty with respect thereto; (2) the partition was not made as prescribed by statute, and the oral agreement was never

performed by constructing or maintaining a lawful fence; (3) plaintiff's cattle were trespassing, and defendants, owed no affirmative duty of caring for them and (4) plaintiff was aware of conditions as they existed, and was at fault in turning his cattle into the pasture. The demurrer was sustained, and it is of this ruling that complaint is made.

The respective owners of adjoining tracts of land under cultivation may be compelled to erect and maintain partition fences, or contribute thereto. Section 2355, Code. The portions each shall so erect and maintain may be designated by the fence viewers (sections 2356, 2357) ; or the owners may agree upon partition of division fences, in writing, signed by them, duly acknowledged and recorded. Section 2361, Code. A lawful fence is defined by section 2367, but, as the petition alleges that the one in controversy was not such as to constitute such a fence, it need not be set out. The conflict in the authorities as to whether an oral agreement dividing a line fence was within the statute of frauds was alluded to in *De Mers v. Rohan*, 126 Iowa, 488, where the decisions are cited, and we said that, "in providing for a written agreement, and specifying the circumstances under which it will be binding, the intention to exclude any other is manifest. Possibly an agreement in parol, when executed, may be good between the immediate parties thereto." The petition clearly alleged that such an agreement was entered into by the owners of the land and had been acquiesced in by the tenants. This agreement had not been executed in the sense that the parties had erected lawful partition fences, or even such as at all times were sufficient to turn stock. But each had undertaken to erect a fence along the line set apart to him, and each undertook to carry out the agreement. The performance of the oral agreement mentioned in the books is not that of maintaining a lawful fence, but that of erecting and keeping in repair a fence along the line which, by agreement, has been set apart

to him. This agreement had in no manner been revoked, and we can see no reason why the landlord of defendant, as well as defendant, should not be bound by their undertaking. Such an agreement does not contemplate the sale or disposition of land. It is merely a promise of one person, in consideration of a like undertaking of another, to construct and maintain a fence along a particular line, and, having been performed, there is no reason why the parties thereto should not be bound thereby until revoked. *Tupper v. Clark,* 43 Vt. 200; *York v. Davis,* 11 N. H. 241; *Glidden v. Towle,* 31 N. H. 147; *Guyer v. Stratton,* 29 Conn. 421; *Ivins v. Ackerson,* 38 N. J. Eq. 220 where the court said: "Such a partition does not, obviously, confer any interest in the land. It does not even transfer any right to the fence, or to any part of it. It does not create any new duty; nor does it impose any new burden. Its whole effect is to assign to each party his share of the duty which the land requires to be performed." See *Pitzner v. Shinnick,* 41 Wis. 676; *Contra, Osborne v. Kimball,* 41 Kan. 187 (21 Pac. 163). Of course, such an agreement is not binding on third parties, nor after revocation. *Pitzner v. Shinnick, supra.*

According to the allegations of the petition, then, the cattle got through the fence because of defendants' fault in not maintaining the same as they had agreed, and if plaintiff suffered injury because thereof he was entitled to recover. Any inquiry as to plaintiff's fault in turning the cattle into this pasture must be determined on the facts as they appear at the trial.

As to defendants other than O. C. Wilson—*Affirmed.* As to O. C. Wilson, it is—*Reversed.*