O. T. LITTLE, Appellee, v. CHARLES LAUBACH, Appellant.

**FENCES:** Oral Contract between Owners—Inurement to Tenants.
1 An oral contract between landowners, under which contract each agrees to build and maintain a specified portion of a division fence, inures to the benefit of not only said contracting owners, *but to the benefit of their subsequent tenants,* even though it does not appear that the tenants formally acquiesced in said contract. It follows that the tenant of the owner who has performed may recover of the owner who has not performed, the damages to crops consequent upon animals' breaking through the defaulting owner's defective fence.

**CONTRACTS:** Rights Acquired by Third Persons. A contract may
2 inure to the benefit of a third person, even though he is not a party thereto, or directly mentioned therein. So held where a contract between landowners, in the matter of maintaining division fences, was held to inure to the benefit of subsequent tenants.

**FENCES:** Basis of Liability for Damages. Principle recognized
3 that a landowner is not liable on account of the absence of a partition fence if no portion of the fence has been assigned to him either (a) by the fence viewers or (b) by agreement between the respective owners.

*Appeal from Calhoun District Court.*—M. E. HUTCHISON, Judge.

JUNE 27, 1918.

ACTION to recover damages for trespassing animals. Opinion states the facts. Verdict and judgment for the plaintiff. Defendant appeals.—*Affirmed.*

*Healy & Thomas,* for appellant.

*J. F. Lavender* and *E. C. Stevenson,* for appellee.

GAYNOR, J.—At the time of the happening of the matters hereinafter complained of, the plaintiff was occupying the southeast quarter of the northwest quarter of Section 23,

1. FENCES: oral contract between owners: inurement to tenants.

as tenant of one McCloud. The defendant was the owner of, and occupying the northeast quarter of, the northwest quarter of said section. An oral agreement had been entered into between the defendant and McCloud, by which McCloud undertook and agreed to keep up the east half of the fence between the land so occupied, and defendant would keep up the west half. The date of this agreement does not affirmatively appear; but, from the record, we assume that it was made some time before plaintiff went into possession, under his lease from McCloud. A fence was built and maintained on the east half of the dividing line. The defendant Laubach's pasture was immediately north of that portion of the line on which he had agreed to build a fence, and plaintiff's cornfield was immediately south of that portion of the line. Plaintiff entered into possession under his lease, and farmed the land for the years 1915 and 1916. At that time, there was a very deficient and insecure fence on the west half of the line: that is, on that portion of the line which defendant agreed with McCloud that he would keep in repair. So far as this record shows, McCloud's portion of that line was not only fenced, but sufficiently fenced. During the year 1916, defendant's cattle came through that portion which defendant had agreed to maintain, and trespassed upon plaintiff's field of corn, and destroyed large quantities of the same. It is to recover for the damages and injury and loss so caused that plaintiff brings this action.

Some facts are not in dispute: First, that the defendant, Laubach, occupied, whether as owner or not, the land imme-

diately north of the plaintiff; that McCloud owned the land immediately south of defendant's, and rented the same to the plaintiff for the years 1915 and 1916; that plaintiff went into possession under his lease, and attempted to raise a field of corn on land immediately south of the west half of this line fence; that defendant had a pasture immediately north of this corn field; that, on account of the insufficiency of the fence between the pasture and the cornfield, defendant's cattle broke over onto plaintiff's land and destroyed his corn.

There was a hearing before a jury and a verdict for the plaintiff. Judgment being entered upon the verdict, defendant appeals. The theory of the defendant is, as we gather it, that, conceding he made an agreement with plaintiff's landlord substantially as claimed by the plaintiff, the agreement was purely personal between him and McCloud, and McCloud alone can maintain an action for its breach; that plaintiff cannot recover damages for the breach of an agreement to which he was not a party. Second, that, the agreement not being made in conformity with the statute, it was only binding on the immediate parties to the agreement, and that the breach thereof furnished no basis for any action to one who is not a party to the agreement; that the duty to maintain the fence rested in contract; that the duty created by the contract was to McCloud, and not to the plaintiff; that, therefore, there was no duty owing to plaintiff for a breach of which action will lie, though the plaintiff may have suffered from the breach.

It would not be contended that, if McCloud were occupying the land and defendant failed to keep up his portion of the fence, and the same conditions existed as are here, the defendant would not have to respond in damages to McCloud. But it is contended that this contract was a personal contract between McCloud and the defendant; that the plaintiff has neither pleaded nor proven that it was adopted or

acquiesced in as a contract binding between him and the defendant. The thought urged is that, before there can be liability for a breach of a contract, the obligation of the contract must run to the party complaining, and there must be mutuality of obligation; that the plaintiff had never undertaken to maintain, nor done anything to maintain, the east half of this division fence; nor had the defendant, in consideration of any agreement or conduct on the part of the plaintiff, assumed the burden to the plaintiff of keeping the west half in condition: and it is contended that, until there is either acquiescence in the original contract made between McCloud and the defendant, or a new contract, by which both this plaintiff and the defendant become bound, there is no contract, enforcible by either, touching the maintenance of a line fence; that, there being no contract, one was as much bound as the other to keep the whole line in repair, and neither can complain of the other because any portion of the line fence is out of repair: and it is contended that the plaintiff must plead either this new contract between himself and the defendant for the maintenance of the partition fence, or he must plead that each party had acquiesced in the original contract, and become bound by its terms. The plaintiff pleaded simply the contract between his landlord and the defendant, the breach of that contract, and the damages resulting therefrom. Defendant and McCloud made a contract as between themselves, and each became bound to maintain a fence upon a portion of the line between their properties. Each bound himself to maintain a portion of that line: McCloud, the east half, and defendant, the west half. McCloud built his portion of the fence, and then placed plaintiff in possession, under a lease by which plaintiff was to pay as rental a portion of the crop raised upon the land. Defendant failed to build or maintain his portion of the fence, and the crop which plaintiff attempted to raise upon the leased premises was destroyed by defendant's cattle. It appears that

plaintiff called defendant's attention to the fact that the fence was insufficient, and that his cattle were trespassing on plaintiff's land and destroying his crops; that the defendant promised to repair the same, saying that he had the posts and wires ready, but was unable to secure time from his own work to discharge the duty which he had assumed under his contract with McCloud.

It is true, under the decisions of this court, that an oral contract, such as we have here, is not binding upon third persons who obtain rights in the property without notice of the contract. The statute provides that the contract should be in writing, and recorded like instruments affecting real estate. The recording is only for the purpose of giving notice of the fact that such an agreement has been made. Where the parties to be affected by the agreement have actual notice of the agreement (and surely Laubach knew of his agreement with McCloud), the contract becomes just as effectual between the parties as if it were reduced to writing and recorded. So it follows that this contract was binding between defendant and McCloud, though not in writing, and though not recorded; and this is true when the parties have acted upon the agreement, or where one of the parties has performed his part of the agreement, with the knowledge and consent of the other. We have, therefore, a situation where this contract between McCloud and defendant is binding upon both McCloud and defendant, though not executed in accordance with the requirements of the statute.

The question here is, Can the plaintiff, as tenant of McCloud, avail himself of this contract, and hold the defendant to its performance? The question is, Can the plaintiff, tenant in possession, hold the defendant liable for injuries which he has received from the failure of defendant to perform his contractual duty, it appearing that the landlord, McCloud, has freely performed on his part, and that the

2. CONTRACTS: rights acquired by third persons.

defendant has received, and is receiving, the benefits of such performance?

Actions for negligence may arise out of the breach of some duty which the one sought to be held owes to the one injured. It presupposes a duty to do or not to do a particular thing which, done or omitted, results in injury to the person to whom the duty ran. As soon as the defendant made his contract with M'Cloud, a duty arose on his part to maintain the west half of this fence. This is a duty· he assumed for the benefit of the occupiers and cultivators of the land. Partition fences are erected and maintained, not only as visible monuments dividing the holdings, but for the protection of· adjoining occupiers from trespass and injury from nomadic animals. An agreement to build such a fence is an agreement to protect against trespassing animals. One who desires to protect himself against such contingency may, without the consent of his neighbor, erect a partition fence upon the line between his property and his neighbor's, or he may divide the obligation with his neighbor, and agree to maintain a portion, and his neighbor a portion. · This agreement when properly made, casts upon each the burden of protecting the other from injury from trespassing animals, over that part of the line against which he has assumed to afford protection. Section 2355 of the Code of 1897 provides:

"The respective owners of adjoining tracts of land, * * * from which each derives any revenue or benefit, shall be compelled to erect and maintain partition fences, or contribute thereto, and keep the same in good repair throughout the year."

Code Section 2356 provides:

"The fence viewers shall have power to determine any controversy arising under this chapter."

And it is further provided that, upon the giving of notice, and the fixing of a time and place, the fence viewers

shall meet, and determine by written order the obligations, rights, and duties of the respective parties in such matter, and assign to each owner the part which he shall erect, maintain, rebuild, etc. It will be noticed that this statute relates to controversies arising. The fence viewers are a body created by statute to determine such controversies arising between landowners. Section 2357 provides the method to be pursued in case one landowner desires to erect a partition fence when the owner of the adjoining land is not liable to contribute thereto. In such case, the fence viewers may assign to each owner the part which he shall erect and maintain, by pursuing the methods prescribed in the preceding section. Thereafter, the adjoining owner shall not be required to contribute to the expense of the erection and maintenance of the fence, until he becomes liable so to do: that is, when he desires to use the portion of the fence for purposes of pasturage, or otherwise, for revenue.

We find from this record, therefore, that the defendant obligated himself to keep up this west half of this partition fence; that he failed to do this; that, after plaintiff took possession, he recognized his obligation and promised to perform, and excused delay in performing by saying that he was pressed for time. It appears that he had procured, or, at least, said he had procured, the material with which to carry out the contract. The injury to the plaintiff is directly traceable to his failure to perform. When the plaintiff took possession of this land, as tenant under McCloud, the duty of protection under the contract passed to the plaintiff. The failure to afford him the protection to which plaintiff was entitled under the contract with McCloud, is the basis of defendant's liability. The injury to the plaintiff is directly traceable to the breach of duty to protect the land rented to the plaintiff, from trespassing animals. The purpose of the fence was to afford protection from trespassing over the west half of this line. The agreement to make the fence in-

volved in it an agreement to afford protection. In order to create liability, it is not necessary always that the breached duty rest in contract made directly with the injured party. It may be a breach of a duty made for his benefit, as well as directly with him. It is the breach of the duty created by the contract that creates the liability. It may be a breach of a legal duty, a breach of a contractual duty, or a duty implied from the relationship of the parties. Here, it had its inception in the contract made with McCloud. When plaintiff received the land from McCloud, it came to him with such protection as the contract with McCloud afforded; and it was the failure of the defendant to give him this protection that brought about the injury complained of. Defendant recognized his duty and his obligation in his dealing with the plaintiff. He gave the plaintiff to understand that he not only recognized, but would perform, the obligation. He is not in a position now to say that the obligation was not binding upon him.

Section 2313 of the Code of 1897 provides, in substance, that an owner of land from which animals escape shall be liable for all damages which the animals do, if they escape in consequence of his neglect to maintain his part of the line partition fence. He is not liable, however, on account of the absence of a lawful partition fence, if no portion of the fence has been assigned to him to keep in repair, either by the fence viewers or by agreement with the parties. From this it is evident that, if there is an agreement to build any portion of the fence, he is liable for trespass across the line which he has agreed to protect. As throwing light upon the matter here under consideration, we call attention to two of our recent cases: *De Mers v. Rohan,* 126 Iowa 488; *Nelson v. Wilson,* 157 Iowa 80.

**3. FENCES: basis of liability for damages.**

It is urged upon our attention that the plaintiff did not plead any ratification or acquiescence in the contract relied

upon. The contract between McCloud and the defendant was one that both parties were competent to make. It was a valid contract. It needed neither ratification nor acquiescence to make it effectual as a contract. Plaintiff's rights rest on this contract, and grow out of his relationship to the subject-matter of the contract, as hereinbefore explained.

Some complaint is made of the instructions given by the court; but, in our view of the case, they were in no sense prejudicial to any rights of the defendant.

We think the judgment of the court is right, and it is —*Affirmed.*

PRESTON, C. J., WEAVER and STEVENS, JJ., concur.