J. W. OSGOOD, Appellee, v. CHARLES E. NAMES, Appellant.

**FENCES:** Oral Agreement for Maintenance. The duty of adjoining
1  landowners to each maintain his respective portion of a partition fence, with consequent liability for all proximately resulting damages in case of a breach of such duty, may arise by *oral commonlaw agreement, acted on by both parties,* even though the statute provides for the fixing of such duty (1) by *written* agreement, signed, acknowledged, and filed with the county recorder, or (2) by official order of the fence viewers. (Secs. 2356, 2361, Code, 1897.)

**FENCES:** Oral Agreement to Maintain—Evidence of Repairs. Testi-
2  mony that an adjoining landowner repaired a certain part of a partition fence has material bearing on the issue whether an oral contract existed for the maintenance of such part by such owner.

*Appeal from Clarke District Court.*—P. C. WINTER, Judge.

SEPTEMBER 27, 1921.

ACTION at law to recover damages for injuries to plaintiff's cattle in the sum of $153, caused by the failure of defendant to maintain a certain part of the division fence between the respective farms of plaintiff and defendant, under the terms of an alleged oral contract between the parties. Verdict of jury finding for the plaintiff, and judgment entered accordingly. Defendant appeals.—*Affirmed.*

*Temple & Temple,* for appellant.

*O. M. Slaymaker* and *A. M. Miller,* for appellee.

DE GRAFF, J.—Plaintiff and defendant are adjoining farm owners, and the petition recites that a division fence between the land of the respective owners was agreed upon between them, and each had maintained his part thereof; that this agreement was oral, and had been acquiesced in by the parties, and each had attempted to keep up his part of the said fence; that, subsequently to the agreement and prior to the injury complained of, plaintiff orally notified the defendant that his said fence was not sufficient, and requested that he repair same and make it stock proof; that, by reason of the negligence and failure on the part of the defendant to maintain a sufficient fence on that portion of the division line allotted and assigned to him, and without any negligence on plaintiff's part, plaintiff's cattle broke through and into defendant's cornfield, and ate such a quantity of corn that one of the cows died and two others were seriously injured, causing damage to the plaintiff in the sum of $153.

In the case at bar, the fence between the farms had never been established by fence viewers and portions thereof assigned to the adjacent owners, nor had a written instrument been executed between the parties. Code Sections 2356 and 2361. The contract rests in parol.

About the time that plaintiff purchased his farm, he had a conversation with the defendant relative to the division of the

fence, which measures a distance of 240 rods between the adjoin-
ing lands. The import of that conversation is
an agreement that the west end should be main-
tained and repaired by defendant, and the east
end by the plaintiff. Subsequently, when notice was given by
plaintiff to defendant that plaintiff's cattle were going through
the fence on the west end, defendant fixed a part of said fence,
and after the cattle incident, he fixed the rest of it. This may
be construed as a recognition by defendant of his duty in the
premises, and a jury could find that the rebuilding and repairing
were done by defendant in pursuance of an agreement between
the respective owners.

*2. Fences: oral agreement to maintain: evidence of repairs.*

A partition fence, within the purview of the statute, is "a
fence on the line between two proprietors, where there is no
road, alley, or something else that would prevent the erection
of such fence." *Hewit v. Jewell*, 59 Iowa 37. A parol agree-
ment respecting a partition fence, if executed, is valid between
the parties thereto, and invokes the remedial provisions of the
statute. *Nelson v. Wilson*, 157 Iowa 80; *Little v. Laubach*, 183
Iowa 1370; *D'Arcy v. Miller*, 86 Ill. 102. If the statement of
principle in *De Mers v. Rohan*, 126 Iowa 488, intends the con-
trary, it is, in this particular, now overruled. We are not deal-
ing with the rights of third parties, nor is the doctrine of con-
structive notice involved. In the absence of express prohibition,
parties may waive a statutory provision enacted for their benefit
when no principle of public policy is violated. The alleged
agreement between plaintiff and defendant contemplated that
the parties should maintain and erect, if necessary, an allotted
partition fence, and each undertook to erect and maintain such
fence (which was performed in whole by one and in part by
the other), and this was done. pursuant to the terms of a parol
agreement. The parties thereto are bound until a revocation
thereof.

The liability in this case being predicated on the negligence
of defendant in failing to maintain his part of the partition
fence, we must inquire what is the character and quantum of re-
coverable damage.

Under the pleadings, negligence is the test of recovery.
The function of the contract between the parties is to fix the

*locus in quo* of the duty of each adjoining owner, and to bring each within the scope and penalty of the breach, in case of default.

To entitle plaintiff to relief, he must establish that defendant was bound to keep in repair a certain portion of the division fence, that he neglected so to do, and that the injury proximately resulted from such negligence.

"The obligation and neglect to keep up the fence is the gist of the action, the foundation of the plaintiff's claim. This is not like an action of trespass *quare clausum;* in such case the gist of the action is the breach of the plaintiff's close.   *   *   * Here, the plaintiff bases his claim upon the duty and neglect of the defendant.'' *Tupper v. Clark,* 43 Vt. 200. See, also, *Wilder v. Stanley,* 65 Vt. 145; *Krum & Peters v. Anthony,* 115 Pa. St. 431.

It is suggested that, as the statute fails to give plaintiff a specific remedy in damages under the circumstances, he must fail. If a statute prescribes a remedy for the violation of a right, the party aggrieved must pursue the statutory remedy, and as a general rule, cannot resort to any other. It is not the intent of the instant statute, however, to deprive a party of any right or remedy under a common-law agreement. Independently of any statute, parties may obligate themselves by contract to maintain boundary and division fences. Secondly, inasmuch as the common law did not require adjoining owners to maintain partition fences, statutes regulating the subject are remedial, and are intended to provide against existing defects in the common law. Such statutes, therefore, must receive a liberal construction, both as to the extent of the change and the means of their execution, as this will more nearly effectuate the intention of the legislature. If the statute creates a right, and fails to prescribe a remedy for the party aggrieved by the violation of such right, it will be presumed that the legislature intended to give such party a remedy by a common-law action for a violation of his statutory right. In working out modern legal problems, we necessarily and naturally respect our historic continuity with the past, and cite precedent. Without precedent, judicial chaos would exist.

Although forms of action have long ceased to exist under

our procedure, the principles underlying and distinguishing the old forms respectively are still of essential importance in determining the nature of the remedy which is applicable to the particular injury. Furthermore, the abolition of the common-law forms of pleading has not changed the rules of substantive law. The forms of action for injuries arising from the neglect to maintain or repair division fences were trespass and case. Trespass was the proper form to use where the injury was a direct one. For example, where the land of A was invaded by the cattle of B, an action in trespass would lie. However, if the injury was not direct, but consequential, trespass on the case was the proper remedy. For example, if A brought an action against B because fences were down which B was bound to repair, *per quod* the horses of A escaped and were killed, the action is on the case.

Plaintiff herein quite properly sued for a consequential damage based on the negligence of the defendant in the particulars alleged in the petition.

Under the statute, the construction and maintenance of a partition fence is compulsory as to the "respective owners of adjoining lands from which each derives any revenue or benefit," when they cannot "agree upon the portion of partition fences between their lands which shall be erected and maintained by each."

This is the only distinction between the common law and the statute in relation to partition fences, except that, "if there be no partition fence, and the line thereof has not been assigned either by the fence viewers or by agreement of parties, any animal trespassing across such partition line shall not be distrained, nor shall there be any liability therefor." Code Sections 2313, 2355, and 2361.

In other words, under the English law, nothing but the ideal invisible boundary which exists in contemplation of the law bounds the owner's land and separates it from his neighbor's. This constituted his fence. This rule compelled the owner of cattle to fence them in; the neighbor is not bound to fence them out. *Fletcher v. Rylands*, L. R., 1 Ex. 265, 280. By early judicial interpretation, this principle was held not to be applicable to conditions in this state, and domestic animals

were declared to be free commoners. *Wagner v. Bissell,* 3 Iowa 396; *Frazier v. Nortinus,* 34 Iowa 82. This is now the statutory rule, with exceptions as to certain animals. Code Sections 2312 and 2313. The respective duties of adjoining owners in the case of partition fences are the same where stock are restrained from running at large as where they are not so restrained. *Miracle Pressed Stone Co. v. Roth,* 144 Iowa 656. The wisdom of legislators in framing positive laws to answer all the purposes of justice has seldom, if ever, been found equal to the subject, and the legislation on the instant matter neither changed nor intended to change the common-law obligations arising from the agreement of the parties in the construction or maintenance of partition fences.

Under the common law, the obligation to maintain a division fence is founded on agreement or prescription, and the right to recover damages in case is clearly recognized and distinguished from trespass *quare* or damage feasant. Although based on precedent, the doctrine is theoretically sound.

In an early decision of the court of Exchequer, it was held that an action was maintainable against the defendant for the defective state of his fences, which by agreement he was bound to repair, *per quod* the plaintiff's horses escaped into the defendant's close, and were there killed by the falling of a haystack. *Powell v. Salisbury,* 2 Younge & Jervis' Rep. 391. In another old English case, plaintiff's horse escaped into the defendant's field, through defects in fences which the defendant was bound to keep in repair, and was there killed by falling into a ditch. It was held that the defendant was liable for the damages. *Anonymous,* 1 Ventris' Rep. 264.

It may be said in this connection that, if cattle escape into an adjoining field, through defects in a fence which the adjoining owner is bound to keep in repair, the latter is not justified in driving them into the highway and leaving them there. Said Lord Denman, of the Court of King's Bench:

"It is perfectly clear that the least to be expected from a party in the situation of the defendant here is that he should put back the sheep into the place in which they were before they quitted it in consequence of his neglect." *Carruthers v. Hollis,* 8 Adol. & Ellis 113.

In the instant case, the parties intended and contemplated by their agreement to place themselves within the protection of the statute governing partition fences, and the provisions of the statute and common-law rights* and remedies not inconsistent therewith must be read into the agreement.

We conclude that the petition states a cause of action; that the instructions given to the jury are not vulnerable to the exceptions saved by defendant; and that the verdict is supported by the evidence. Wherefore, the judgment entered is—
*Affirmed.*

EVANS, C. J., WEAVER and PRESTON, JJ., concur.