J. R. Scott, Appellant, v. Fred B. Nesper, County Treasurer, et al., Appellees.

**FENCES: Sufficiency of Application to Fence Viewers.** Applications
1  to the fence viewers to settle fence controversies need not be couched in language of legal exactness.

**FENCES: Existence of "Controversy."** A "controversy" sufficient
2  to give the fence viewers jurisdiction exists whenever adjoining landowners are unable to agree on the question whether a line fence should be rebuilt.

**JUDGMENT: Conclusiveness—Interested Nonparties.** A nonparty to
3  a suit is not bound by the adjudication simply because he was interested in the issue and was called as a witness.

**FENCES: Viewers Limited by Application.** When the application
4  to the fence viewers was sufficient to authorize them to determine the real controversy, to wit, whether the adjoining owner should *rebuild* his fence, and when the viewers confine themselves to such controversy, it is immaterial that the application also requested the viewers to proceed to allot to each owner his respective portion of the fence.

**FENCES: Appeal as Sole Remedy.** Appeal is the sole remedy to re-
5  view the nonvoid action of fence viewers.

*Appeal from Muscatine District Court.*—D. V. Jackson, Judge.

June 23, 1922.

Rehearing Denied September 30, 1922.

Action in equity, to cancel a tax assessed against plaintiff's property, upon certification thereof by the township trustees,

for the building of a partition fence, the cost of which had been paid by defendant Westbrook, who was an adjoining landowner. The defendants' demurrer to the petition was sustained, and, plaintiff electing to stand upon his petition, judgment was rendered against him for costs, and the petition was dismissed. The plaintiff appeals.—*Affirmed.*

*E. F. Richman,* for appellant.

*J. G. Kammerer* and *L. A. Crull,* for appellees.

PRESTON, J.—Other defendants than the county treasurer named in the caption are the auditor, township trustees, and Westbrook, the adjoining landowner. The petition as amended takes up twelve pages of the abstract. A summary sufficient to show the questions presented is substantially this: That, on October 12, 1920, Westbrook gave a written request or notice to the trustees, demanding "the erection and maintenance of a partition fence" between the adjoining lands of plaintiff and Westbrook, and that the fence viewers "take the proper and necessary proceedings to establish said fence as by law provided." On November 15, 1920, the trustees published in the Muscatine Journal a notice addressed to J. R. Scott, owner, and C. G. Dallas, tenant in possession, stating that "P. W. Westbrook has complained to the township trustees of your neglect and refusal to build your portion of the partition fence between his land and yours." and fixing a definite time for the hearing, and stating that, unless plaintiff appeared, the trustees would "make such order as would be right in the premises." This notice was served personally on the tenant. (It seems to be conceded that plaintiff was a nonresident.) The petition further alleges that the record proceedings of the trustees are as follows:

"Whereas, P. W. Westbrook has complained that J. R. Scott refused and neglected to build his portion of the partition fence in controversy, they gave notice by publication to J. R. Scott, as a nonresident, and personally served C. G. Dallas, as tenant in possession, of their proposed meeting, and that, at the time and place fixed in said notices, they examined said partition fence and heard the allegations of the parties appearing

in reference thereto, and find: That said J. R. Scott's portion of said fence is the north half thereof, and said fence, to wit, the north half thereof, is insufficient, and that it should be rebuilt by said J. R. Scott.''

And it was ordered that said Scott have the same rebuilt within 15 days, and pay the costs of the proceedings and the certified fees and costs, to wit, $......... Subsequently, Westbrook notified the trustees of Scott's failure to construct a fence, in compliance with their orders, and that Westbrook had constructed the same, and requested the trustees to appraise it, etc. Another like notice was given, fixing a time and place when the trustees would meet to appraise and fix the value of the fence erected by Westbrook. This was done, and thereafter, the trustees delivered to the county auditor a writing reciting the substance of the proceedings in relation to said fence, and ending as follows:

''Now, therefore, said J. R. Scott having neglected and refused to pay said sum, and being in default therefor for ten days, we hereby certify the sum of $287.60 should be entered by you upon the tax list against the following property of J. R. Scott [describing the real estate], and upon collection of the same, the sum so paid should be paid to P. W. Westbrook, who has paid and advanced said amount, all as provided by Section 2358 of the 1913 Supplement to the Code.''

Thereupon, the county treasurer caused to be entered on his tax lists, against the lands so described, the amount so certified. The petition herein further alleges that what purports to be a full and true transcript of the record of the transaction in this matter is recorded in the office of the recorder, in a certain book at a certain page, which is referred to in the petition, except that the plaintiff charges that the original petition filed with the fence viewers by Westbrook is not fully and truly set out therein. Plaintiff alleges that said original petition represented only in substance, as reason thereof, that Scott refuses and neglects to erect and maintain his share or portion of the division fence, and that it did not, in general terms, ''request the erection and maintenance of a partition fence, as shown by said transcript.'' The petition further alleges a prior adjudication, for that, prior to the institution of the proceedings now

in question, to wit, in December, 1919, in an action between J.
R. Scott and one Blanchard, it became and was a necessary
issue to be determined, whether the land adjoining and sepa-
rated by the particular fence line in controversy herein was
owned in severalty, as to distinct portions thereof, or the whole
line in common and undivided interest; that in said cause it
was determined that plaintiff and defendant in that case were
the owners in common thereof, each of an undivided half; that
Westbrook, though not nominally a party, was a party inter-
ested, knew of the pendency of the issues therein, and was a
witness for the defendant. It is further alleged herein that the
fence viewers, previous to any action by them herein, had writ-
ten information handed to them, referring them to said proceed-
ings as an adjudication with respect to the interests of the ad-
joining owners in said fence line; that defendant Westbrook
was in privity with the defendant in said cause of Scott v.
Blanchard, and was and is concluded by the decision therein
from instituting an inquiry to determine any question of own-
ership in severalty of said partition fence, except to allot spe-
cific portions to each adjoining owner; that since said adjudica-
tion there has been no change in the status prior to the action
of the trustees herein. It is further alleged that there has been
at no time any "controversy" between plaintiff and Westbrook
as to said party fence, and that he has had no notice that West-
brook claimed or would claim before the viewers in their pro-
ceedings that the adjoining owners owned the said fence in sev-
eralty, or otherwise than as determined in the Scott v. Blanchard
suit; that the tax and entry thereof were without authority of
law and void; that the request made of the trustees by West-
brook in writing was too indefinite to call into exercise the
jurisdiction of the fence viewers, and did not authorize them
to do the things they attempted to do. The demurrer was a gen-
eral equitable demurrer. There are 14 assignments of error in
the abstract, some of which are restated in appellant's argu-
ment, and a part of which are covered by appellant's points and
authorities. It seems to us that two or three points are de-
cisive of the case.

1. It is thought by appellant that the application of West-
brook to the trustees was too indefinite to authorize the action

taken. In one place it is said that the application was for the

1. FENCES: sufficiency of application to fence viewers.

erection and maintenance of a partition fence. Taking the record all the way through, it appears that this was the matter being considered and determined, and nothing else, although one sentence in the application asked that the fence viewers take the proper and necessary proceedings to establish said fence, as by law provided. This was not done. The trustees were probably not lawyers, and words used in their record, as to what Westbrook's application was, are not employed with the exactness expected under the circumstances. We think that what we have said in regard to technical nicety under such circumstances is applicable here. *State v. Hall*, 190 Iowa 1283, 1290. There is no difficulty in determining what the controversy was.

2. It is thought by appellant, and argued at considerable length, that, under Section 2356 of the Code, the fence viewers have no jurisdiction unless there is a "controversy" between

2. FENCES: existence of "controversy."

adjoining owners over some of the matters specified in the chapter in which said section is found. One of these matters is to determine, upon the request of any landowner, matters in regard to the erection, maintenance, rebuilding, etc., of a partition fence, or the payment for an existing hedge or fence, and so on. The argument is that there was no controversy in this case. The word "controversy" does not necessarily—though it is often the case—mean an action in court. The term is broad and comprehensive, and has been variously defined as a dispute. 1 Corpus Juris 940. It is apparent at a glance, from the record herein, that Westbrook was claiming that plaintiff should build or rebuild his portion of the fence, and that this was being resisted, or the right disputed. This made a controversy. It is thought by appellant that, because the petition alleges the conclusion that there was no controversy, this is admitted; but taking all the allegations of the petition together, and the records made by the trustees, it is shown without any question that there was a controversy.

3. It is next complained by appellant that the trustees, as fence viewers, may do only what the request by Westbrook contemplated; that the notice is the foundation for their action;

3. JUDGMENT: con-    and that no other or different request may be
clusiveness: in-    considered or acted upon.  We have already re-
terested non-
parties.            ferred to the fact that there was a controversy,
and what it was about, and that this was referred to in the no-
tice, and that their action was in accordance with the notice.
It is said by appellant that they cite no special authorities,
except the Code and the general principles announced in the
argument, as to the power of the fence viewers, with respect to
their finding that it was Scott's duty to maintain a specific por-
tion of the fence.  The claim is that this matter was adjudicated
in the case of Scott v. Blanchard in the district court.  Neither
Westbrook nor any of the defendants herein were parties to that
suit.  There are cases holding that a person, though not a party
to an action, may be so intimately associated with the case, and
his interests so related thereto, and his participation therein
such, as to constitute an adjudication against such person.  Such
is not the situation in the instant case.  True, the petition herein
alleges that Westbrook was in privity with Blanchard in the
suit; but the only basis of fact for such a conclusion or allega-
tion is that Westbrook was a witness in that case, and, of course,
necessarily · present in court, and that he knew of the issues.
Just how he was interested does not appear from any allega-
tion or statement of fact.  For aught that appears, Westbrook
may have been merely subpœnaed as a witness in the case.  Under
the record, we think there was no adjudication binding upon
Westbrook.  The alleged adjudication is the only basis for the
allegation that there has been no change in the status of the
fence, as to- whether it was owned in severalty or in common.
When the question of adjudication goes out, the alleged status
falls with it.

We do not understand that the action of the trustees herein
established or allotted a particular portion of the fence to each
one.  The determination by the fence viewers was as to plain-
                    tiff's duty to build, and the cost . of plaintiff's
4. FENCES: view-    portion of the fence; and that seems to have
ers limited by
application.         been the only question before the fence viewers,
although Paragraph 11 of the plaintiff's petition states that he
does not set out all of the action of the trustees, as fence viewers,
which is of record in Muscatine County, but that the original

petition represented only, in substance, that said Scott refused and neglects to erect and maintain his share or portion of the division fence, etc. Appellees contend that the notice, which reads, ''and make such order as may be right in the premises,'' authorized the trustees to make an allotment of the partition fence and determine which part each should maintain, under the statute, Section 2356. This section reads, in part:

''At said time and place the fence viewers shall meet and determine by written order the obligations, rights and duties of the respective parties in such matter, and assign to each owner the part which he shall erect, maintain, rebuild, * * *''

Whether the trustees had authority, under the notice and the statute, to make an allotment, would seem not to be very material in this case, because, as said, they did not do so. They simply found that ''J. R. Scott refused and neglected to build his portion of the partition fence in controversy;'' that they ''examined said partition fence and heard the allegations of the parties; * * * that said J. R. Scott's portion of said fence is the north half thereof, and that said north half is insufficient, and that it should be rebuilt by said J. R. Scott.'' It found, as an existing fact, without then making any division or allotment, that Scott's part was the north half, and that it was insufficient, etc. An erroneous finding of fact by a court or tribunal does not deprive it of jurisdiction. The notice herein did give the trustees jurisdiction to hear the matter of rebuilding of plaintiff's portion of the fence and fixing and certifying the cost. In the *Pickerell* case, infra, it was held that several matters can be included in one notice, but that the notice must be broad enough to cover the matter acted upon. Here, the notice did so as to the building of plaintiff's portion of the fence; and we are inclined to think it was broad enough to authorize the making of a division of the fence, even though this seems not to have been done.

We do not find any allegation in the petition that, at some time in the past, the division of the fence between the different landowners had not been properly made. Appellant relies on the adjudication of the case in the district court, and states that thereafter there was no change in the status, prior to the action of the trustees, complained of.

4.   It should have been stated that the plaintiff did not appear before the fence viewers in response to the notices served upon him.   Appellees contend that he should have done so, and should have appealed, under Code Section 2369,

5. FENCES: appeal
   as sole remedy.
and that such remedy is exclusive.   They cite *Pickerell v. Davis,* 164 Iowa 576, 580; *Miles v. Tomlinson,* 110 Iowa 322, 326.   It was said in the *Pickerell* case that the fence viewers act judicially in respect to their duties, and that, when they are acting within their jurisdiction, their finding is final and conclusive upon the parties, unless appealed from.   We think the proceedings of the trustees were not void. Notice by publication may be served on nonresidents in these proceedings.   Section 2359, Code Supplement, 1913.

The ruling and judgment of the district court is—*Affirmed.*

STEVENS, C. J., WEAVER and DE GRAFF, JJ., concur.