FRANK W. KRUSE, Appellant, v. JAMES VAIL et al., Appellees.

No. 47124.

DECEMBER 16, 1947.

Smith & Swink, of Montezuma, for appellant.

Bray, Carson & McCoy, of Oskaloosa, for appellees.

HALE, J.—Plaintiff, Frank W. Kruse, is the owner of one hundred sixty acres of land and Hugh L. Dye is the owner of eighty acres adjoining the north half of plaintiff's land on the west. The fence in controversy is that running north and south on the west line of plaintiff's land and the east line of Dye's land. Defendants are the township trustees of Pleasant Grove township.

Apparently some dispute had arisen between the two adjoining landowners as to the portions of the line fence to be maintained by each. At any rate, plaintiff, Kruse, visited attorneys in Montezuma, who wrote Dye under date of July 27, 1946. This letter addressed to Dye and Dye's reply thereto through his attorney, being matters of controversy, are set out at length:

"Dear Mr. Dye:

Frank Kruse and his son have consulted us regarding the maintenance of the partition fence between your farm and the Kruse farm. From our information it appears that there has been an agreement between the owners of the Kruse farm and the owners of your farm, made years ago, whereby the South half of said fence should be and was erected and maintained by the owners of the Kruse farm, and whereby the North half of said fence should be and was erected and maintained by the owners of your farm. That being the situation there is nothing that either you or they can do about it unless you voluntarily get together and mutually make a new agreement. Neither of you could change ends of the fence without the consent of the other. That does not mean, however, that a new agreement cannot be made. Co-operation is always desirable between neighbors.

Yours very truly,<br>SMITH & SWINK<br>[Signed] L. J. Swink."

Under date of July 29, 1946, the reply follows:

"Gentlemen:

Your letter of July 27th to Mr. Hugh L. Dye has been referred to me. Therein you refer to an agreement pertaining to a division of the partition fence. I write to enquire whether this agreement was in writing, and if so, whether the same was recorded in the office of the Recorder of Mahaska County. Of course, any agreement that may have been entered into must have been in writing and recorded to be enforcible. If there is such a written agreement recorded, of course Mr. Dye will abide thereby. If there is no such recorded written agreement, then he will expect to maintain the south end of the fence.

Thanking you for this information, I remain

Yours very truly,<br>[Signed] Thomas J. Bray."

On August 2, 1946, Hugh L. Dye filed a written request to the trustees asking them to determine all the controversies

1280

relating to the fence, to notify Kruse, and asking for a determination of the portions of the partition fence on the boundary line between the two tracts. On the same day notice was given to Kruse by the township clerk, alleging Dye's request and notifying him of the time fixed for a meeting of the trustees. The trustees, acting as fence viewers, met pursuant to the notice and rendered a decision dividing the fence on the boundary line by giving to Dye the north eighty-one rods nine feet, and to Kruse the south eighty-one rods nine feet of the boundary line, the decision being signed August 13th by the trustees.

At this meeting Kruse was present and filed with the trustees a statement signed by his attorneys in which he, in substance, told them that he did not appear in response to any notice but appeared as an onlooker only, and objected to any action that the trustees might take under their notice respecting the fence; objecting further that there was no jurisdiction; and alleging that no written request had been made by Dye; that no controversy existed between said adjoining landowners as contemplated in chapter 113 of the 1946 Code; and further alleging that an oral agreement had existed since prior to 1920 in regard to the portions of the fence to be maintained by the adjoining owners.

Thereafter, on September 15, 1946, Frank W. Kruse, plaintiff, filed his petition for writ of certiorari, reciting the actions of the trustees, alleging that they were illegal and without jurisdiction, and, in substance, alleged what was contained in his objections filed with the trustees. Writ was issued as prayed and return made and answer filed. A motion to strike by plaintiff was overruled and the cause came on for trial.

There was introduced in the trial what is called "Statement and Acknowledgment Respecting Shares of Partition Fence and the Maintenance Thereof." This was dated August 5, 1946, and it will be noticed that the date is after the exchange of letters between the attorneys of the parties in July, and filed in the recorder's office the day before the trustees met, on August 12, 1946. It consists of a statement by Taylor, one of the former owners of the property, and Kruse, and alleges that it is executed for the purpose of reciting the terms of an oral agree-

ment made prior to 1920, and sets out what the alleged agreement consisted of. This was properly objected to on various grounds, but the record does not disclose the ruling except in the court's finding and decision.

On November 18th the court rendered its findings and decision, holding that the trustees had jurisdiction of said action, and the cause was dismissed. Apparently the only question presented in this appeal is, Did the township trustees have jurisdiction to determine the rights of the parties in any particular? Plaintiff insists that another question is, Could the trustees modify a verbal agreement regarding the fence agreement between former adjoining landowners?

I. Kruse, plaintiff and appellant, assigns twenty-six alleged errors which he relies upon for reversal. Of course, it is not practicable to attempt to review all of these claimed errors, nor is it necessary to do so. The first group of errors relates to certain rulings on evidence. We find no error in overruling of plaintiff's objections to the admission of testimony. There is no serious disagreement about the facts and we consider it unnecessary to review all these assignments.

II. One question raised, in the sixth assignment of error, relates to the letters from the attorneys and representatives of the parties to the dispute about the fence, which plaintiff insists should have been stricken because purely evidentiary in nature. These letters constituted what defendants claim was the notice to the plaintiff of a controversy, and it is argued by the plaintiff, under a later assignment, that these letters fall short of constituting a written request by one landowner to an adjoining landowner to erect a fence. We think they were properly attached to the defendants' answer and properly admitted in evidence. They are not merely evidentiary in character but are really the basis of part of defendants' claim.

III. The principal claim of plaintiff is that there was no written request made by the defendant Dye of Kruse. It is true, as alleged by plaintiff, Kruse, that there must be a request. Section 113.1, Code, 1946, relating to the duties of the trustees as fence viewers, provides:

"The respective owners of adjoining tracts of land shall

upon written request of either owner be compelled to erect and maintain partition fences, or contribute thereto, and keep the same in good repair throughout the year.''

Section 113.3 provides:

''The fence viewers shall have power to determine any controversy arising under this chapter, upon giving five days notice in writing to the opposite party or parties, prescribing the time and place of meeting to hear and determine the matter named in said notice. Upon request of any landowner, the fence viewers shall give such notice to all adjoining landowners liable for the erection,. maintenance, rebuilding, trimming, or cutting back, or repairing of a partition fence, or to pay for an existing hedge or fence.''

Therefore, in view of these two sections it is necessary that there shall not only be a controversy but, as provided in section 113.1, a written request, as argued by plaintiff.

It is said in Scott v. Nesper, 194 Iowa 538, 542, 188 N. W. 889, 891, that the fence viewers have no jurisdiction unless there is a controversy between adjoining owners over some of the matters in the chapter in which said section is found, and, in substance, that such controversy exists whenever adjoining landowners are unable to agree on the question whether a line fence should be rebuilt. Our court has held, however, that, as a matter of law, in order to constitute a controversy within the meaning of the statute there must be a written request by one owner to the other for apportionment and maintenance, and it is stated in Sinnott .v. District Court, 201 Iowa 292, 207 N. W. 129, that the plain purpose of the statute is to impose no obligation on one landowner, enforceable by the fence viewers, to build or repair a partition fence, until written request of the adjoining owner upon him to do so, and that the written request is an essential prerequisite to the creation of the duty the fence viewers may enforce; it is essential to their jurisdiction to act at all. Without it there is nothing of which they could take jurisdiction.. To the same effect is the case of Nichols v. Fierce, 202 Iowa 1358; 212 N. W. 151.

One of our late decisions, Morrison v. Kipping, 227 Iowa

1146, 290 N. W. 59, refers to these cases, but distinguishes them from the case therein reviewed by pointing out that the objection to the jurisdiction of the trustees could not be made by the owner who invoked the action of the trustees. This latter case is not applicable here, and we think that prior to the request to the trustees as fence viewers there must have been something in the form of a written request upon the adjoining owner who is sought to be coerced, and that the rule is established that the request must be made in order that the trustees shall have jurisdiction. But in the Sinnott and Nichols cases it is distinctly stated that there was no written request whatsoever, and therein the facts differ from the facts in this case.

The statute is silent as to the form, language, or subject matter of the notice to be given to the adjoining landowner. It would seem that he should be apprised of the claim of the person who seeks to have the line-fence dispute settled. Otherwise, there would be no request. But any notice or request in writing which accomplishes that purpose would be sufficient under the law.

 In this case Dye had discussed the matter of fences with the son of Kruse, and no doubt the son had communicated to his father something of Dye's claim as to the division of the fence. The son, who was the tenant upon his father's farm, testified that before any letters were written he knew there was a controversy about the division of the fence; that the father also knew is evidenced by the fact that they called on the plaintiff's attorney in relation to the fence matter on or about July 27th; that the letter from plaintiff's attorneys to Dye of date July 27th shows that the claims of Dye were known to plaintiff, and the response to that letter by Bray on behalf of Dye plainly showed that Dye expected to claim the right to maintain the south end of the fence. Also, that it was within plaintiff's knowledge that there was no written agreement of record in Mahaska county between himself and the former owners, the Taylors. The conclusion of the letter in which it was said: "If there is no such recorded written agreement, then he will expect to maintain the south end of the fence," referred to Dye. In view of what was said in the letter sent in Kruse's behalf, and the reply thereto by the attorney of Dye,

and also in view of the fact that there is no special manner of request required by the statute, we must hold that Kruse was fully acquainted with the demands of Dye, and that there was such a request and controversy existing as would give the trustees jurisdiction to act when so requested.

■ IV. Plaintiff argues that the court erred in not holding that the trustees' record as certified to the clerk of the district court constituted the sole basis of their case. Here the plaintiff is in error. The plain wording of Rule 315 of the Rules of Civil Procedure shows the contrary. That provides that on the hearing, after full return, the court, in its discretion, may receive any transcript of the evidence taken in the original proceeding, and such other oral or written evidence as is explanatory of the matters contained in the return. Of course, it is further provided that the transcript and additional evidence shall be considered for the sole purpose of determining the legality of the proceedings, and the sufficiency of the evidence before the original tribunal, board, or officer to sustain its or his action, unless otherwise specially provided by statute. While the evidence is intended to be considered in this case solely as to jurisdiction, the court has the right and duty to consider other matters relating to such jurisdiction.

■ V. At the trial there was offered in evidence the statement heretofore referred to as being read at the meeting of the trustees on August 13, 1946. To this objection was duly made but the record fails to disclose the action of the court thereon. The court, in its finding and decision, mentioned this claim and refused to recognize either the verbal claim or the written statement heretofore referred to, stating that the evidence showed that Taylor and his wife, Mabel, held such property as joint owners, and after Taylor had sold the property he could not bind Dye to any agreement he might make in relation to said fence so long as the alleged contract (of sale) was valid. The court dismissed this claim rather summarily. We are inclined to think the court was right. No such claim was made in the pleadings, either in plaintiff's petition or reply. Dye, the present owner of the equitable title, was not

a party to the alleged verbal agreement, and at the institution of proceedings before the trustees there was no written agreement and nothing of record in relation to the fences. Cheshire v. McCoy & Henry, 205 Iowa 474, 218 N. W. 329, does not support plaintiff's theory that the consent is binding upon a subsequent purchaser of land without notice, either actual or constructive, and there is nothing in the record in this case that indicates such notice. Neither does the case of Osgood v. Names, 191 Iowa 1227, 1229, 184 N. W. 331, 332, support the plaintiff's theory. The opinion in that case states that:

"A parol agreement respecting a partition fence, if executed, is valid *between the parties* thereto, and invokes the remedial provisions of the statute." Citing cases. (Italics ours.) The opinion further states: "We are not dealing with the rights of third parties, nor is the doctrine of constructive notice involved."

The second claim in plaintiff's argument in this respect states that a fence agreement between adjoining landowners, when recorded in the county recorder's office, is binding upon owners and township trustees alike. There was no such written agreement, nor anything of that nature, either made or recorded until after this controversy had arisen, and the paper itself does not amount to an agreement but is simply a mere statement. It is neither an affidavit nor a deposition, and Taylor, one of the makers of such statement, was not a witness or under oath. We agree with defendants as to the weight which shall be given to this claim.

Other matters are presented in the arguments but we are satisfied that the only matter here is the question of jurisdiction and that question was correctly decided by the trial court. The cause is therefore affirmed.—Affirmed.

OLIVER, C. J., and BLISS, GARFIELD, SMITH, MANTZ, MULRONEY, and HAYS, JJ., concur.