MARIE LAUGHLIN, appellee, v. IRENE FRANC, appellant; ERNEST McDERMOTT, Clerk of Monroe Township, Fremont County, et al. (Township Trustees), appellees.

No. 48863.

(Reported in 73 N.W.2d 750)

DECEMBER 13, 1955.

Paul V. Nichols, of Shenandoah, for appellant.

Keenan & Clovis, of Shenandoah, for appellee.

THOMPSON, J.—This appeal, while involving little from a monetary standpoint, is replete with confusion and legal prob-

lems. At the outset we are met with a peculiarity in the caption of the case as it comes to us, and as we must presume it was carried below. While Marie Laughlin is named as plaintiff and Irene Franc as defendant, and the township officers merely as "appellees", in fact as the matter was tried below Irene Franc was the plaintiff and Marie Laughlin and the other parties were defendants. Without doubt, Marie Laughlin instituted the controversies here by appealing to the township trustees to function as fence viewers; but Irene Franc appealed from their orders and carried the burden in the district court. She filed her petition and proceeded in accordance with rule 368, R. C. P. Marie Laughlin cross-petitioned, and in effect the trial court granted her the relief asked and confirmed the order of the fence viewers. Irene Franc's appeal was dismissed. We shall hereinafter refer to Irene Franc as the plaintiff and Marie Laughlin as the defendant.

■■ I. At the outset we are confronted with the question whether the action was tried below in equity or at law. Without doubt, an appeal to the district court from an order of fence viewers is a special proceeding, and so triable at law. Moore v. Short, 227 Iowa 380, 381, 288 N.W. 407, 408; In re Fence Dispute between Swisher et al., 204 Iowa 1072, 1073, 1074, 216 N.W. 673. But plaintiff's petition, filed as required by rule 368, R. C. P., asked equitable relief. The court did not rule upon objections to testimony, in accordance with general equity practice, and it entered its "decree" when determining the case. "Decree" is generally held to apply to judicial decisions of courts of equity; National Surety Co. v. Mulligan, 105 N. J. L. 336, 146 A. 372, 375; Eiger v. Hunt, 282 Ill. App. 399. We conclude this appeal was in fact tried in equity; and even though a cause be cognizable at law, if by agreement express or implied the court and the parties try it in equity, we will consider the cause to be in that forum and will try it de novo upon appeal to this court. McCulloch Investment Co. v. Spencer, 246 Iowa 433, 436, 67 N.W.2d 924, 925, 926, and cases cited; Knigge v. Dencker, 246 Iowa 1387, 1390, 72 N.W.2d 494, 495. Our consideration here is de novo. However, the point is not of great practical

importance, since the decision must turn upon questions of law which would be the same in either forum.

II. The defendant, Marie Laughlin, has been since 1932 the owner of one hundred and twenty acres of farm land consisting of three forty-acre tracts lying in a row running east and west. Michael Doyle, until his death on December 31, 1952, owned three forty-acre parcels lying immediately north of and adjoining the Laughlin land, and another forty immediately east of and adjoining the east forty of the defendant. For some years there had been an oral agreement between Michael Doyle and Marie Laughlin under which Doyle maintained the partition fence between his two west forties and the Laughlin farm, and Mrs. Laughlin maintained the fence on the north between her east forty and the Doyle land, and the north-and-south fence between this forty and the Doyle forty immediately east of it. The litigation here concerns this north-and-south fence along the east end of the Laughlin land and the west side of the Doyle forty lying east of it. The part of Mrs. Laughlin's property here involved is described as the Southwest Quarter (SW¼) of the Southeast Quarter (SE¼) of Section 4, Township 70 North, Range 40 West of the Fifth Principal Meridian, in Fremont County, Iowa; the Doyle land lying immediately to the east of it is the Southeast Quarter (SE¼) of the Southeast Quarter (SE¼) of the same section, township and range.

Michael Doyle died testate. Under the terms of his will, his son Walter Doyle became the owner of the forty acres lying farthest west; another son, Leo Doyle, was given the forty next to the east; two daughters, Cecilia Hughes and Martha McGargle (or McGargill) were given the forty next to the east of that given to Leo (and other land); and the plaintiff, Irene Franc, was devised the forty acres immediately to the east of the Laughlin land. It is the fence along the west side of this latter tract with which we are concerned here.

There was no trouble about the fences during the lifetime of Michael Doyle. But thereafter it apparently developed that the west 160 rods of the partition fence, which had been maintained by Doyle, needed replacing. Walter and Leo Doyle, the owners of the two forty-acre tracts of which this fence was the southern

line, required the defendant Laughlin to build or pay for building one half thereof. Mrs. Laughlin, feeling that if she were to be called upon to pay for one half of this fence she should have some compensation for the fences along the Hughes-McGargle land and Mrs. Franc's forty which she had maintained, contacted Mrs. Hughes and Mrs. McGargle, and believed she had reached an agreement with them. Mrs. Franc was a resident of Denver, Colorado. On July 28, 1954, Mrs. Laughlin wrote her a letter, the substance of which was that Mrs. Hughes and Mrs. McGargle had agreed to pay each one third of the cost of the new fence along the line between Walter and Leo and the Laughlin land. (The total estimated cost of this fence was about $75 to $80, a sum considerably less than the printing costs alone on this appeal.) The letter requested Mrs. Franc to pay the remaining one third, and estimated the cost to each of the three sisters—Mrs. Hughes, Mrs. McGargle and Mrs. Franc—at $25 to $27. Mrs. Franc replied promptly, saying that she would pay her one third. Apparently some trouble developed between Mrs. Hughes and the defendant Laughlin, and the agreement was not consummated. Without notifying Mrs. Franc of the failure to work out the plan which had been suggested to her and to which she had agreed, Mrs. Laughlin appealed to the township trustees of Monroe Township to act in determining the supposed controversy. The only notice given Mrs. Franc of the time fixed for hearing was by a letter from the township clerk, dated September 4, 1954, and advising her a meeting to "get a settlement * * * agreeable to all parties concerned" would be held on September 9, 1954, at 1 p.m. Mrs. Franc received the letter at Denver on September 6 or 7, and did not appear at the hearing. The fence viewers met as scheduled, assigned the north half of the partition fence to Mrs. Franc to build and maintain and the south half to Mrs. Laughlin, and granted Mrs. Laughlin permission to remove the north half of the fence, apparently on the theory that it belonged to her, since she had under the verbal agreement with Doyle maintained it and she might do with it as she pleased. On the next day, September 10, 1954, Mrs. Laughlin removed this part of the fence. It should be said that the entire fence in question, between the Laughlin land and the

forty acres devised to Mrs. Franc by her father's will was a legal and tight fence except that it had only two strands of barbed wire, instead of three, above the woven wire. Mrs. Franc appealed from the orders of the fence viewers to the district court. After trial the court entered its decree assigning the north one half of the fence to Mrs. Franc to build and maintain, the south one half to Mrs. Laughlin, and ordering Mrs. Franc to erect and maintain a hog-tight fence along the one half assigned to her. It will be observed this in effect confirmed the findings and orders of the fence viewers.

III. We are confronted with another procedural question at this point. It is the contention of the appellee that by appealing from the decision of the fence viewers the appellant-plaintiff Franc waived any question of the jurisdiction of the viewers. It is conceded no proper or legal notice of the time fixed for hearing was given the plaintiff. See sections 113.7 and 113.9, Code of Iowa 1954. Nor was there any request first made in writing upon her which was refused, or any existing controversy, both of which are essential prerequisites to jurisdiction and action of the fence viewers. Kruse v. Vail, 238 Iowa 1277, 1281, 30 N.W.2d 159, 162; Nichols v. Fierce, 202 Iowa 1358, 1360, 1361, 212 N.W. 151, 152; Sinnott v. District Court, 201 Iowa 292, 296, 297, 207 N.W. 129, 131; Scott v. Nesper, 194 Iowa 538, 542, 188 N.W. 889, 891. The letter from Mrs. Laughlin to Mrs. Franc under date of July 28, 1954, was in no proper sense a request. It was a friendly suggestion as to the manner in which the fence problem which had arisen because there were several owners of the Doyle land instead of one as theretofore might be settled. Mrs. Franc agreed with the suggestion; there was no slightest controversy between her and Mrs. Laughlin about the fence between their lands. That some trouble arose between the defendant and Mrs. Hughes over the partition fence between lands with which the plaintiff had not the least concern did not make a controversy between Mrs. Laughlin and Mrs. Franc. Indeed, it may well have been that if Mrs. Franc had been advised that the plan suggested by Mrs. Laughlin and consented to by her had been abandoned, an agreement might still have been

reached. But Mrs. Laughlin did not notify her of the failure of the proposed adjustment; she went to the fence viewers. These facts do not show a demand or an existing controversy, except between the defendant and Mrs. Hughes.

 It follows that the fence viewers had jurisdiction neither of the person nor of the subject matter. Sinnott v. District Court, supra, at page 297 of 201 Iowa, page 131 of 207 N.W. We also hold the plaintiff, Franc, by appealing from the decision of the viewers, did not waive objection to their jurisdiction or ratify it. We think appeal a proper way to raise jurisdictional questions, although it is not exclusive when the judgment or order is void. Certiorari, or an equitable action to cancel the judgment have been approved as proper remedies, and in addition such a judgment may generally be collaterally attacked. It is said in 2 Am. Jur., Appeal and Error, section 36: "Although the courts are not in accord as to whether a void judgment, decree, or order is appealable, the prevailing opinion is clearly to the effect that the appellate court will so far take cognizance of the void entry as to reverse it and restore the parties to the position they originally occupied." Many cases are cited in the notes under this section. We have ourselves impliedly at least recognized that a void judgment or order is appealable; and it follows as a matter of course that if such an order is appealable the jurisdictional defects are not waived by appealing. In Davis v. Fish, 1 (G. Greene) Iowa 406, 48 Am. Dec. 387, we held a judgment void and reversed it for that reason. Sinnott v. District Court, supra, was a certiorari action. It was urged certiorari was not a proper remedy to determine the invalidity of an order of fence viewers, but appeal was exclusive. But this court said (page 297 of 201 Iowa, page 131 of 207 N.W.):

"Since the fence viewers acted without jurisdiction of the subject matter, certiorari was a proper remedy, and the parties aggrieved *were not limited to the right of appeal.*" (Italics supplied.)

IV. However, the matters discussed in the preceding division are not of controlling importance under the situation presented in the instant case, except perhaps upon the question of

the taxation of the costs of the proceeding before the fence viewers. The issues in the trial court as made by the petition of the plaintiff, Franc, the answer and cross-petition of the defendant, Laughlin, and the answer to cross-petition and reply of the plaintiff unmistakably presented the court with a case, in equity as we have held, in which it was required to determine the merits of the ownership of the fence, the proper apportionment of it between the contesting parties, and the right of the defendant to remove the north one half which she had already done. It may be important to note that at the time this part of the fence was removed the defendant was apparently relying upon the order of the fence viewers. Because it was void it furnished her no protection or justification for her act.

But we think the court was within its proper sphere and jurisdiction in deciding the questions suggested above. The plaintiff-appellant asked not only that the order of the viewers be set aside and declared void, but that the defendant be required to replace the fence she had removed, or if she failed to do so within thirty days the appellant be empowered to replace it at the cost of the appellee, the value thereof to be fixed by the court. Equitable relief was asked also, and in her reply the plaintiff pleaded that the fence should be divided by the court so that plaintiff would have the north end and the defendant the south end. The defendant by way of answer admitted the lack of jurisdiction of the fence viewers, but asked that plaintiff, Mrs. Franc, be required to build a fence to replace the north one half which defendant had removed and to maintain it. In her cross-petition she alleged waiver of jurisdictional defects in the proceedings of the viewers, and in substance prayed for the same relief as in her answer. The evidence presented by the parties went largely to these issues, and the court tried the case as so made. This, we think, it was required to do. The plaintiff did not waive objection to the jurisdiction of the fence viewers; but she did ask the court to take original jurisdiction of the controversy.

V. We come then to the real question in the case: Was the trial court in error in finding (as did the fence viewers) that

Mrs. Laughlin was within her rights in removing the north one half of the fence? It must be kept in mind that Mrs. Laughlin, under oral agreement with Michael Doyle, had maintained the entire fence upon the line between her east forty-acre tract and the easterly adjoining forty acres owned then by Doyle and now by the plaintiff, Irene Franc. The north one half of the fence was assigned by the fence viewers and by the trial court to Mrs. Franc to be maintained, and both the viewers and the court held that after its removal by Mrs. Laughlin, Mrs. Franc was under the duty to replace it. We conclude the answer must be in the affirmative.

The material question here is whether under the Iowa law the owners of a partition fence are tenants in common or whether each owns the part which he is required to build and maintain. The matter is not free from difficulty, and there is a surprising lack of exact authority. It is understandable that the landowner who builds one half of a partition fence will look upon that part as his property. (It is worthy of note that there is no evidence as to who built the fence here in controversy. Mrs. Laughlin in her testimony says: "This line has always had a fence on it as long as I can remember and it has always been a hog-tight fence with woven wire." It is evident that she at least did not build it. The record tells us only who "kept it up".) But we think such is not the law. It is our opinion that Michael Doyle and Marie Laughlin were tenants in common of the entire fence. So when Michael Doyle died, leaving to Irene Franc the forty-acre tract immediately east of Mrs. Laughlin's land, she became likewise the owner of his former rights in the partition fence. Willing v. Booker, 160 Va. 461, 168 S.E. 417, 419. Of course, Mrs. Laughlin has the same right in that part of the fence maintained by Doyle.

The rule as to ownership of partition fences is thus expressed in 36 C. J. S., Fences, section 15(b): "* * * a fence erected on the line between the lands of adjoining owners * * * generally belongs to them as tenants in common * * *. * * * since a partition fence is required to be, and generally is, built equally on both sides of the line * * * it is presumed to be the common property of both owners, until the contrary is shown."

In Kellum v. Williams, 252 Ala. 71, 39 So.2d 573, it was held that a water main laid in an alley between the parties, appurtenant to the property of each, was owned in cotenancy, and neither might prevent free access to and use of the water by the other. The main had been laid by Williams' predecessor in title, with an agreement each might have the use of the water. Our own case of Musch v. Burkhart, 83 Iowa 301, 303, 48 N.W. 1025, 12 L. R. A. 484, 32 Am. St. Rep. 305, is in point upon the question. Plaintiff's predecessor in title had planted a row of cottonwood trees along the line between his land and that of the defendant, to which wires were attached, making a fence. After the plaintiff acquired his land, the defendant attempted to remove the trees along the west one half of the line, claiming that by verbal agreement he had been assigned that portion of the partition fence. We said:

"Under what agreement, if any, between the owners of the two tracts of land, they were planted, does not appear * * *. They stand upon and draw sustenance from both tracts of land, and, in the absence of a showing to the contrary, it must be presumed that they are owned by the parties to this action as tenants in common."

As the trees in the foregoing cited case stand upon the land of both parties, so does a partition fence. The line between adjoining landowners is an imaginary one. It has no breadth; and a fence upon the line must of necessity be built upon land of each owner. We cited and quoted from Musch v. Burkhart, supra, with approval in Harndon v. Stultz, 124 Iowa 440, 442, 100 N.W. 329, 330, a controversy involving the right to remove or cause to be removed a hedge fence.

In Hannabalson v. Sessions, 116 Iowa 457, 462, 90 N.W. 93, 95, 93 Am. St. Rep. 250, is this language: "The entire fence, by whomsoever built, being placed upon the boundary, is in a just sense, common property, and it would be an intolerable conclusion to say that neither party could touch the portion not built by himself without danger of a lawsuit."

We believe the true theory is that our statutes, upon which the defendant-appellee much relies to show individual rather than common ownership of partition fences, are intended only

to provide a workable method of building and maintaining partition fences, without in any way supporting the conclusion that each party owns entirely the part he constructs and keeps in repair. The entire fence, if it is built upon the line, is partly upon the land of each owner, and is owned in common. Any other construction would lead to misunderstandings and vexatious and costly litigation, as is so aptly illustrated here.

VI. We have not overlooked that part of the rule above quoted from 36 C. J. S., Fences, supra, which says a partition fence is presumed to be the property of both owners "until the contrary is shown." It is no doubt true that if one owner builds the entire fence he is the sole owner until he is reimbursed by the adjoining owner for a proper part of the expense. It may also be that the adjoining owners may by agreement provide that each is the sole owner of that part built and maintained by him. But we find no such circumstances here.

Mrs. Laughlin on direct examination said: "Up to the time of his death, Mike Doyle owned the real estate north and east of me. I kept up the fence between my land and the forty that now belongs to Irene Franc. Mike Doyle kept up the fence west of the land which is now owned by Mrs. Hughes and Mrs. McGargill."

In her letter to Mrs. Franc she said: "There was an agreement between Mike Laughlin (defendant's deceased husband) and Leo and your dad that we would keep up the half mile east and north of us, I mean, a quarter east and a quarter west, which made it a half mile, and your dad took the west half mile * * *."

It is to be noted that on cross-examination she said: "I own the fence. I could take it out. I owned all of that half mile of fence. Under my agreement with Mike Doyle * * * I would own the west (east?) half mile. * * * This line has always had a fence on it as long as I can remember * * *."

Here is a definite claim of ownership, but Mrs. Laughlin does not say what the exact terms of the agreement with Doyle were; and when she says "under my agreement with Mike Doyle I would own the half mile" it is evident she is giving her version of the law rather than claiming there was any definite contract that each party should own the part of the fence he maintained.

Her other references to the agreement show merely an understanding as to maintenance. We conclude there is here shown "nothing to the contrary" to take the matter out of the general rule that a partition fence is owned in cotenancy.

VII. It follows that if the parties owned the fence as tenants in common Mrs. Laughlin had no right to remove any part of it. One cotenant may not destroy, injure or remove the common property. "When one tenant in common destroys the subject of the tenancy, he is liable to his co-tenant for the damages he thereby sustains." Musch v. Burkhart, supra, page 303 of 83 Iowa, page 1025 of 48 N.W. In Harndon v. Stultz, supra, page 442 of 124 Iowa, page 330 of 100 N.W., we said: "* * * if defendant were undertaking to destroy the hedge without plaintiff's consent, a writ would issue, upon demand of the latter, to prevent the spoliation * * *."

In some jurisdictions a landowner is given the right to remove a partition fence, or part of it, upon notice and at certain times of the year, by statutory authority, but we have no such statute in Iowa. Section 113.16, Code of Iowa 1954, apparently concerns only the case of a landowner who has built a fence without contribution from the adjoining owner. The general rule, in the absence of statute, is that a partition fence may not be removed by either adjoining landowner, except for purposes of repairing or rebuilding. In 36 C. J. S., Fences, section 17b(1), it is said: "* * * a partition fence considered the joint property of the adjoining landowners * * * cannot be arbitrarily removed or destroyed by either of the owners * * * without the consent of the other * * *. If one owner improperly removes or destroys a partition fence, he is liable to the other in an appropriate action * * *." In fact, it is held that even where the agreement between the adjoining owners was such that each owned his part of the fence in severalty, neither might remove it to the damage of the other without complying with statutory provisions providing for removal. Meyer v. Perkins, 89 Neb. 59, 130 N.W. 986, 987, 988, Ann. Cas. 1912C 468.

There is some early authority that, although adjoining landowners are tenants in common of a partition fence one may remove or destroy it without liability to the other. Gibson v.

Vaughn, 18 S. C. L. (2 Bailey) 389, 23 Am. Dec. 143. But in 22 Am. Jur., Fences, section 34, the soundness of this holding is doubted. It is said: "Such holding, however, seems at variance with the principle that an action of trespass will lie against a co-owner of property who commits acts which amount to a virtual destruction of the common estate or of the interest of another tenant therein." (Citing 14 Am. Jur., Cotenancy, page 133, section 64 et seq.)

We conclude that the action was tried in equity and this appeal is considered as triable de novo; that the actions and orders of the fence viewers, so far as they concerned the parties and their lands and fences, were without jurisdiction either of the person of the plaintiff, Franc, or of the subject matter; that the parties by their pleadings and evidence made a case which required the trial court to determine their rights in the fence involved; that the plaintiff and defendant owned the fence as tenants in common; and that the court was in error in holding that Mrs. Laughlin had a right to remove the north one half of the fence and in requiring Mrs. Franc to rebuild it. We find no error in the holding that Mrs. Franc should in the future maintain the north one half of the fence and Mrs. Laughlin the south one half. The cause is remanded to the district court for decree in accordance with this opinion. The decree should direct that the defendant, Laughlin, replace that part of the fence removed by her within such time as may be fixed by the trial court in its decree, not later than April 1, 1956; and upon her failure to do so that the plaintiff may rebuild the fence with the reasonable cost thereof to be taxed against the defendant, the court retaining jurisdiction until this matter is settled. All costs of the fence viewers and in both courts should be taxed against the defendant, Laughlin.—Reversed.

All JUSTICES concur.