# IN THE SUPREME COURT OF IOWA

No. 71 / 05-1767

Filed August 10, 2007

**JERRY D. LONGFELLOW,**

Appellant,

vs.

**HAL SAYLER,**

Appellee.

Appeal from the Iowa District Court for Taylor County, John D. Lloyd, Judge.

A landowner appeals a decision of the fence viewers.  **REVERSED AND CASE REMANDED.**

Richard L. Wilson of Wilson & Spurrier, P.C., Lenox, and Richard O. McConville of Coppola, Sandre, McConville & Carroll, P.C., West Des Moines, for appellant.

Stuart D. Nielsen and Stephanie M. Nielsen of Nielsen & Nielsen, P.C., Corning, for appellee.

**WIGGINS, Justice.**

A landowner and his neighbor had a dispute over an agreement to erect and maintain a partition fence between their properties. The landowner requested the fence viewers determine whether the neighbor's fence complied with the agreement. The fence viewers determined the fence complied with the agreement. The landowner appealed the fence viewers' decision to the district court. The district court agreed with the fence viewers and entered judgment for the neighbor. On our review, we find as a matter of law the record establishes the neighbor's fence did not comply with the agreement. Therefore, we reverse the judgment of the district court and remand the case for the district court to enter judgment in favor of the landowner consistent with this opinion.

## I. Background Facts.

Jerry Longfellow and Carolyn Sayler owned adjoining parcels of land sharing a boundary fence line. Since 1955 Longfellow has operated a cattle and row crop farm on his property. Originally, there was a fence between the Longfellow and Sayler farms. However, the fence was not adequate to keep cattle from mixing between the Sayler and Longfellow operations. Due to these problems, Longfellow and Carolyn Sayler entered into a voluntary fence division agreement. Longfellow's attorney drafted the agreement. The parties signed the agreement and recorded it with the Taylor county recorder on September 30, 1977.

After providing the legal description for the Longfellow and Sayler plots, the agreement defines the duties of each party. The agreement states for the common fence lying between the Longfellow and Sayler parcels, Longfellow "shall have the responsibility for the construction, maintenance and repair of the North 80 rods of such common fence" and Sayler "shall

have the responsibility for the construction, maintenance and repair of the South 80 rods of the common fence." The agreement also provides:

> that both parties are to have their portion of said fences so erected and/or repaired and maintained on or before December 31, 1977, and thereafter to so maintain the stated portions assigned to such party as per this Agreement.

Under the agreement, Longfellow and Carolyn Sayler

> agreed that should either party bring all of their portion of the fence to a tight fence condition as defined by Section 113.20 of the 1977 Code of Iowa, that the other party hereto shall bring all of their portions of such fence to such tight fence condition within ninety days.

Section 113.20 of the 1977 Code defined a tight fence. It stated:

> All tight partition fences shall consist of:
>
> 1. Not less than twenty-six inches of substantial woven wire on the bottom, with three strands of barbed wire with not less than thirty-six barbs of at least two points to the rod, on top, the top wire to be not less than forty-eight inches, nor more than fifty-four inches high.
>
> 2. Good substantial woven wire not less than forty-eight inches nor more than fifty-four inches high with one barbed wire of not less than thirty-six barbs of two points to the rod, not more than four inches above said woven wire.
>
> 3. Any other kind of a tight partition fence, which in the opinion of the fence viewers, is equivalent thereto.

Iowa Code § 113.20 (1977).[1] Longfellow and Carolyn Sayler agreed the fence agreement should be construed as a covenant and as binding against the parties and their grantees, executors, administrators, heirs, devisees, successors, or assigns.

Carolyn Sayler passed away and her son, Hal Sayler (Sayler), the defendant in this action, purchased the Sayler farm. Sayler now represents

all interests in the real estate described in the fence agreement. When Sayler purchased the farm, he knew there was a fence agreement between the Sayler farm and the Longfellow farm. Sayler admits the agreement was and is a covenant running with the land and is binding on him.

Longfellow's fence is constructed of thirty-nine-inch woven wire, with two barbed wires on top and one barbed wire on the bottom of the fence. Longfellow did not offer any evidence about the condition of the Sayler fence prior to Sayler's purchase of the farm. The photographs entered into evidence show the old Sayler fence had three barbed wires and did not contain any woven wire. It is not clear from the record when the old Sayler fence was built or what the condition of the fence was in 1977 when the fence agreement was recorded.

After Sayler acquired the property, Longfellow approached Sayler and asked him to bring his fence to a tight condition. Sayler told Longfellow he was only going to install a barbed-wire fence because Sayler thought a tight fence was too expensive. Sayler testified he did not want to put a woven-wire fence in because a woven-wire fence is more difficult to maintain.

Longfellow sent Sayler a letter through the sheriff's office requesting Sayler to bring his fence to a tight condition. Longfellow also sent a notice to the township trustees about the dispute. After Sayler received Longfellow's letter he contacted the township trustees and inquired whether he was required under the agreement to build a woven-wire fence or if a five-barbed-wire fence would conform to the agreement.

Sayler contends the trustees informed him a fence constructed of five strands of barbed wire would suffice under the agreement. Sayler went

---

[1]All references to chapter 113 are to the 1977 Code of Iowa. In 1993 the Code editor transferred chapter 113 to chapter 359A.

ahead, and in the face of Longfellow's objections, built the five-barbed-wire fence with posts at approximately every ten or twelve feet of the fence line.

## II. Prior Proceedings.

By sending the letter to Sayler and notifying the township trustees, Longfellow invoked the powers of the fence viewers to determine the fence controversy. Iowa Code §§ 359A.3, .4, .9 (2003).[2] Three trustees, acting as fence viewers, came out to the fence line and viewed the fence. The fence viewers issued an order finding the Sayler fence to be lawful and tight. The fence viewers assessed Longfellow with the costs of the fence-viewing proceeding.

Longfellow appealed the fence viewers' decision to the district court. As an affirmative defense, Sayler asserted he complied with the fence agreement because the fence viewers determined his fence was lawful and tight.

Prior to trial Longfellow filed a motion in limine claiming the order of the fence viewers was not admissible at trial. The district court sustained the motion. At trial the district court reversed itself and allowed Sayler to enter the order of the fence viewers. The district court changed its ruling because it now understood the case involved "an interpretation of a fence agreement already in existence which incorporates code sections which specifically provides as one option a finding by the trustees of what is an equivalent tight fence." Accordingly, the district court considered the order relevant.

The district court found the agreement between the parties clearly refers to Code section 113.20. The court further found although Sayler's fence did not comply with either subsection 113.20(1) or (2), it did comply

---

[2]All references to chapter 359A are to the 2003 Code of Iowa.

with subsection 113.20(3), which allows the fence viewers to determine whether a fence is equivalent to a tight fence.

Further, because the district court found "the Sayler fence has never been anything but a barbed-wire fence" and, "for 27 years, [Longfellow] did not seek to enforce the tight fence requirement," it concluded Longfellow was precluded from enforcement of the tight fence requirement by the doctrines of waiver and estoppel by acquiescence. The district court dismissed Longfellow's petition and taxed all costs to him.

Longfellow filed a motion to amend or enlarge the findings of fact and conclusions of law. The district court denied Longfellow's motion.

### III. Issues.

Longfellow appeals claiming the district court erred: (1) in admitting the order of the fence viewers; (2) in finding the Sayler fence was in compliance with the agreement; and (3) by applying two affirmative defenses not pled by Sayler. Sayler agreed he did not plead either of the affirmative defenses and therefore, he waived these issues. Consequently, we will only address the first two issues raised by Longfellow.

### IV. Standard of Review.

Although the clerk docketed this case in equity, Longfellow filed it as an appeal of the fence viewers' decision. In his appeal Longfellow requested the decision of the fence viewers be reversed and the court to enforce the agreement. The standard of review on appeal is not governed by how the clerk docketed the case, but rather by how the parties tried the case in the district court. *Henning v. Security Bank,* 564 N.W.2d 398, 399 (Iowa 1997).

The parties tried the case as an appeal from the fence viewers' decision, which necessarily included an interpretation of the agreement. An appeal from a decision of the fence viewers is triable as a law action. *Moore*

*v. Short*, 227 Iowa 380, 381, 288 N.W. 407, 408 (1939). Therefore, we review an appeal from the district court's decision in a fence-viewing case for the correction of errors at law. *Duncalf v. Ritscher Farms, Inc.*, 627 N.W.2d 906, 908 (Iowa 2001). Thus, we are bound by the district court's well-supported factual findings, but not by its legal conclusions. *Falczynski v. Amoco Oil Co.*, 533 N.W.2d 226, 230 (Iowa 1995).

The construction and interpretation of a contract is generally reviewed as a matter of law. *Hartig Drug Co. v. Hartig*, 602 N.W.2d 794, 797 (Iowa 1999). The construction or interpretation made by the district court is not binding on us. *Id.* However, if the district court's interpretation was predicated upon extrinsic evidence, the findings of the court are binding on appeal if supported by substantial evidence. *Connie's Constr. Co., Inc. v. Fireman's Fund Ins. Co.*, 227 N.W.2d 207, 210 (Iowa 1975).

## V. Statutory Framework.

In Iowa there is no common law duty for landowners to fence their property. *Jacobs v. Stover*, 243 N.W.2d 642, 644 (Iowa 1976) (citing cases). Instead, the Iowa legislature has created two circumstances in which a landowner is required to erect and maintain a partition fence.

First, a landowner is required to erect and maintain a partition fence when an agreement is reached between adjoining landowners. Iowa Code § 359A.12. The Code requires the agreement to be in writing,[3] describing each landowners' land, stating the portion of the partition fence that will be erected and maintained by each owner, and describing the parts of the fence so assigned. *Id.* The agreement is to be signed and acknowledged by the landowners and recorded in the office of the recorder of deeds of the

---

[3]Although the Code requires the agreement to be in writing, this court has enforced oral agreements between landowners. *See Osgood v. Names*, 191 Iowa 1227, 1233, 184 N.W. 331, 333 (1921) (recognizing an oral partition fence agreement to keep in repair a portion of the partition fence).

county or counties in which the fence is situated. *Id.* If the written agreement is recorded, the agreement is binding on the makers, their heirs, and subsequent grantees. *Id.* § 359A.13. The parties can also intend the agreement to be a covenant that runs with the land. *Sexauer v. Wilson*, 136 Iowa 357, 362, 113 N.W. 941, 943 (1907). A written agreement to erect and maintain a partition fence is enforceable in district court. 3 Marlin M. Volz, Jr., *Iowa Practice: Methods of Practice* § 46:7, at 336 (2006) [hereinafter Volz].

Second, under Iowa Code section 359A.1A an adjoining landowner can request another adjoining landowner to maintain a partition fence. *See* Iowa Code § 359A.1A ("The respective owners of adjoining tracts of land shall upon written request of either owner be compelled to erect and maintain partition fences, or contribute thereto, and keep the same in good repair throughout the year."). If a conflict arises between the two adjoining landowners, the Code provides that one landowner may request the fence viewers to determine the controversy. *Id.* §§ 359A.3, .4. Once an order by the fence viewers is recorded, the order is binding on the makers, their heirs, and subsequent grantees. *Id.* § 359A.13. The decision of the fence viewers can be appealed to the district court. *Id.* § 359A.23.

**VI. Analysis.**

*A. Procedure employed by Longfellow to enforce the fence agreement.* The fence agreement between Longfellow and Sayler provides:

> should either party bring all of their portion of the fence to a tight fence condition as defined by Section 113.20 of the 1977 Code of Iowa, that the other party hereto shall bring all of their portion of such fence to such tight fence condition within ninety days.

Under the doctrine of incorporation, an extrinsic document becomes part of the contract by reference to that document in the contract.

*Hofmeyer v. Iowa Dist. Ct.*, 640 N.W.2d 225, 228 (Iowa 2001). The doctrine of incorporation requires the contract to make a clear and specific reference to an extrinsic document to incorporate the document into the contract. *In re Estate of Kokjohn v. Harrington*, 531 N.W.2d 99, 100-01 (Iowa 1995). Whether a contract incorporates extrinsic material presents a question of law. *Hofmeyer*, 640 N.W.2d at 228. Statutes and administrative rules can become part of a contract under the doctrine of incorporation. *See id.* at 229 (holding an administrative rule referred to in the contract became part of the contract under the doctrine of incorporation); 11 Richard A. Lord, *Williston on Contracts* § 30:19, at 202 (4th ed. 1999) [hereinafter *Williston on Contracts*] (stating "[w]hen a contract expressly incorporates a statutory enactment by reference, that enactment becomes part of a contract for the indicated purposes just as though the words of that enactment were set out in full in the contract").

Here, the fence agreement contained a clear and specific reference to section 113.20 of the 1977 Iowa Code. This incorporation created a requirement on both parties to bring each party's portion of the partition fence to a tight fence condition as defined by section 113.20. The statutory requirements explicitly set forth in subsections 113.20(1) and (2) require the fence to be partially made of woven wire. *See* Iowa Code § 113.20(1), (2) (stating "[a]ll tight partition fences shall consist of: (1) . . . substantial woven wire . . . [or] (2) [g]ood substantial woven wire . . . .").

Sayler admits his fence was made only of barbed wire and did not contain woven wire. Therefore, the Sayler fence did not meet the specific statutory requirements contained in subsections 113.20(1) and (2). Accordingly, the Sayler fence can only comply with the agreement by meeting the statutory definition of a tight fence contained in subsection

113.20(3). Subsection 113.20(3) requires the fence viewers to view the partition fence and determine whether Sayler's portion of the fence is an equivalent tight fence. *See id.* § 113.20(3) (stating "[a]ll tight partition fences shall consist of: . . . (3) [a]ny other kind of a tight partition fence which, in the opinion of the fence viewers, is equivalent thereto").

Longfellow requested the trustees, acting as fence viewers, to determine the fence controversy. The fence viewers visited the partition fence, viewed it, and determined the Sayler portion of the fence was lawful and tight.

*B. The effect of using the fence viewers to determine the dispute.* The district court decided in favor of Sayler finding the fence viewers' determination that the Sayler fence was lawful and tight satisfied any obligation Sayler had regarding his portion of the fence under the agreement. We disagree.

Under chapter 359A, when there is no written agreement, a party's appeal to the district court of the fence viewers' decision requires a trial as in any other case. Iowa Code § 359A.23. Accordingly, the appeal of a fence viewers' decision is triable at law. *Laughlin v. Franc*, 247 Iowa 345, 347, 73 N.W.2d 750, 751 (1955). Either party has the right to demand a trial by jury. *Moore*, 227 Iowa at 381, 288 N.W. at 408. As in all civil trials, the rules of civil procedure and the rules of evidence apply. Iowa R. Civ. P. 1.101; Iowa R. Evid. 5.101.

When a party requests the fence viewers to settle a dispute under an agreement, the decision of the fence viewers is appealable, just as any other decision of the fence viewers. *See Huber v. Wilkinson*, 46 Iowa 458, 459 (1877). In *Huber*, the plaintiff claimed he entered an agreement with his neighbor requiring his neighbor to build and maintain a fence capable of

turning sheep and swine. *Id.* Instead of bringing an action in district court to enforce the agreement, the plaintiff first asked the fence viewers to decide the dispute. *Id.* The fence viewers found in favor of the plaintiff. *Id.* On appeal to the district court, the dispute was settled by a trial anew, rather than by enforcement of the fence viewers' decision. *Id.* at 459-60. On appeal to this court, we affirmed the district court's judgment to enforce the agreement. *Id.* at 460.

The fence viewers' decision is appealable in this case because the provisions and procedures of chapter 359A were incorporated into the parties' agreement. *See Miller v. Marshall County*, 641 N.W.2d 742, 751 (Iowa 2002) (stating there is a presumption that applicable statutes are incorporated into parties' contracts); *Williston on Contracts*, at 203 (stating "the incorporation of applicable existing law into a contract does not require a deliberate expression by the parties"). This procedure is consistent with the legislative scheme enacted regarding the use of fence viewers to settle disputes. *See* Iowa Code § 359A.23; *Laughlin*, 247 Iowa at 347, 73 N.W.2d at 751.

In a trial held on an appeal from a fence viewers' decision the finder of fact is required to determine anew any issues generated regarding the division, construction, repair, or maintenance of the fence in question. Volz, at 347. If the fence viewers can find a fence to be equivalent to a tight fence under subsection 113.20(3), the finder of fact is required to make an independent determination whether the fence is equivalent to a tight fence at the district court trial. It is illogical to assume the legislature would make the decision of the fence viewers binding if a party requests the fence viewers to settle a dispute under a written agreement, but non-binding when a party requests the fence viewers to settle a dispute when there is no

written agreement.

In this case, the district court found "[t]he fence viewers determined that the 5-strand barbed-wire fence was both 'lawful' and 'tight.' Thus, the fence complies with the clear language of the agreement." Clearly, the district court found in favor of Sayler without making independent factual findings about the fence and merely accepted as binding the findings of the fence viewers. We find this was error. On an appeal of a fence viewers' decision, the district court is required to make its own factual findings regarding the division, construction, repair, or maintenance of the fence in question. Accordingly, the district court should not have relied on the fence viewers to be the ultimate arbitrators of this partition fence dispute.

*C. Admissibility of the fence viewers' decision.* It has long been the law of this state that in an appeal of a fence viewers' decision, their decision is not admissible at trial in the district court. *Smith v. Ellyson*, 137 Iowa 391, 394, 115 N.W. 40, 41 (1908). The reason for this rule is to allow the finder of fact to determine the dispute solely based on the evidence admitted at trial. Therefore, the district court erred in admitting the decision of the fence viewers into evidence and treating it as the final decision settling the dispute between the parties.

*D. Whether the evidence supports the district court's finding that the Sayler fence complied with the terms of the fence agreement.* The district court has the duty to determine the facts based on the evidence admitted at trial. Therefore, we must determine whether substantial evidence supports these findings.

The fence agreement incorporated section 113.20's definition of a tight fence into the agreement. The 1977 Code distinguishes a tight fence from a lawful fence. To qualify as a lawful fence under the 1977 Code, the

fence is only required to have rails, boards, or wire fastened between the fence posts. Iowa Code § 113.18. On the other hand, the 1977 Code requires a tight fence to have substantial woven wire and barbed wire between the posts. *Id.* § 113.20. The difference between a tight fence and a lawful fence under the 1977 Code is that a tight fence contains a physical barrier of woven wire whereas a lawful fence does not. The 1977 Code also provides that any other fence determined to be "equivalent" to a tight fence can qualify under the statutory definition of a tight fence. *Id.* § 113.20(3). "Equivalent" means "corresponding or virtually identical esp. in effect or function." *Webster's Third New International Dictionary* 769 (unabr. ed. 2002). Therefore, in order for a fence to be equivalent to a tight fence, it must contain some sort of physical barrier corresponding or virtually identical in effect or function to the substantial woven wire specification described in subsections 113.20(1) and (2).

The district court found although Longfellow's fence did not comply with the specifications in subsections 113.20(1) or (2), the parties agreed Longfellow's fence is equivalent to a tight fence. The district court also found Longfellow's fence consisted of a combination of woven wire and barbed wire. We believe substantial evidence supports finding that Longfellow's fence is equivalent to a tight fence because his fence contains a physical barrier corresponding or virtually identical in effect or function to the substantial woven wire specification described in subsections 113.20(1) and (2).

Sayler's fence consisted of five strands of barbed wire equally spaced on the posts. This spacing does not provide a physical barrier corresponding or virtually identical in effect or function to the substantial woven wire specification described in subsections 113.20(1) and (2).

Without an equivalent physical barrier, Sayler's fence is nothing more than a lawful fence. Accordingly, not only do we find substantial evidence does not support the district court finding that Sayler's fence is a tight fence under section 113.20, but we also find as a matter of law Sayler's fence is not equivalent to a tight fence.

Accordingly, we must reverse the judgment of the district court.

**VII. Disposition.**

Because the record in this case establishes as a matter of law that Sayler's fence is not a tight fence under section 113.20, we conclude the district court incorrectly entered judgment in favor of Sayler when it should have entered judgment in favor of Longfellow. Therefore, we reverse the judgment of the district court and remand the case back to the district court. On remand the district court shall enter judgment in favor of Longfellow for the relief he requested. The judgment should require Sayler to bring his fence to a tight condition as defined by section 113.20 of the 1977 Code of Iowa within ninety days of the judgment, pay all the costs associated with the fence viewers' proceeding, and tax Sayler the costs of this action.

**REVERSED AND CASE REMANDED.**